**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Jack Eugene LAMPSON,
Defendant-Appellant.**

**No. 79–1387.**

United States Court of Appeals,
Seventh Circuit.

Argued April 30, 1980.

Decided Aug. 4, 1980.

Rehearing and Rehearing En Banc
Denied Sept. 30, 1980.

---

**64**

Emanuel Krakauer, Chicago, Ill., for defendant-appellant.

Thomas P. Sullivan, U. S. Atty., Robert Hackman, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before CUMMINGS and BAUER, Circuit Judges, and EAST,* District Judge.

PER CURIAM:

Lampson appeals his criminal conviction for theft of mail under 18 U.S.C. § 1708. He raises objections concerning failure of proof, improper exclusion of evidence, insufficient evidence, and denial of the constitutional right to a speedy trial. We find no reversible error and affirm the conviction.

I.  *BACKGROUND*

At approximately 4:45 A.M. on June 19, 1978, a Mr. and Mrs. Jacobs received a phone call stating that there was a burglary in progress at the Compton, Illinois Post Office. They called the sheriff's office and then proceeded to the post office. They both heard pounding noises, and Mr. Jacobs saw defendant Lampson stick his head out of the post office several times to look around. Mrs. Jacobs concealed herself behind a tree at the rear of the post office. She then saw two men come around the corner of a building, with the older of the two, Lampson, looking around the corner of the building and up and down the alley. As they then walked toward her, Mrs. Jacobs confronted them, and they fled. Mrs. Jacobs observed that Lampson was carrying a box.

The men fled in separate directions, and were immediately apprehended by deputy sheriffs. Mrs. Jacobs followed Lampson's tracks in the dew-covered, uncut grass and found, at a spot Lampson had twice passed by while being chased by the sheriff, a box and several pieces of mail. She picked up the mail, put it in the box, and gave them to "the Sheriff's Department." Within 15 minutes a Detective Blake arrived on the scene. One of the sheriff's deputies took this box of mail out of a squad car where it had been put, and turned it over to Detective Blake. It was later delivered to a postal inspector.

On June 29, 1978, Lampson and Robert Qualls, Lampson's nephew, were indicted in a two-count indictment for forcible entry into a post office and theft of mail, in violation of 18 U.S.C. §§ 2115 [1] and 1708.[2] Following pretrial motions, the case was set for trial on October 23, 1978. Due to an ongoing civil anti-trust trial, and the District Judge's planned hospitalization, the trial date was continued to the following November 29. The trial date had to be

---

* Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

1.   18 U.S.C. § 2115 involves breaking and entering into a post office:

   "Whoever forcibly breaks into or attempts to break into any post office, or any building used in whole or in part as a post office, with intent to commit in such post office, or building or part thereof, so used, any larceny or other depredation, shall be fined not more than $1,000 or imprisoned not more than five years, or both."
   18 U.S.C. § 2115.

2.   18 U.S.C. § 1708 concerns theft of mail:

   "Whoever steals, takes, or abstracts, or by fraud or deception obtains, or attempts so to obtain, from or out of any mail, post office, or station thereof, letter box, mail receptacle, or any mail route or other authorized depository for mail matter or from a letter or mail carrier, any letter, postal card, package, bag, or mail, or abstracts or removes from any such letter, package, bag, or mail, any article or thing contained therein, or secretes, embezzles, or destroys any such letter, postal card, package, bag, or mail, or any article or thing contained therein;

   *       *       *       *       *       *

   "Shall be fined not more than $2,000 or imprisoned not more than five years, or both."
   18 U.S.C. § 1708.

again postponed, but on November 30, Lampson was ordered released on a $5,000 signature bond. He chose not to sign the recognizance bond and remained in federal custody until January 22, 1979.

On February 15, 1979, trial was commenced. Qualls was found guilty of both counts of the indictment, while Lampson was found guilty only of count II—theft of mail. Lampson was sentenced to five years imprisonment. On April 9, 1979, Lampson filed his notice of appeal.[3]

## II. SUBSTANTIVE OBJECTIONS

Lampson objects to his conviction on grounds of failure of proof, improper exclusion of evidence, insufficient evidence, and denial of his constitutional right to a speedy trial.

### A. Failure of Proof

Lampson contends that there was a break in the demonstrated chain of custody of the pieces of mail, such that the pieces of mail introduced at trial were not shown to be the same pieces found at the scene of the crime by Mrs. Jacobs. Lampson argues that because Mrs. Jacobs could not identify which sheriff's deputy she gave the box of mail to, the chain of custody was broken at that point (Detective Blake did not testify which deputy he received it from, and no deputy testified to receiving or turning over the mail). Since there were no identifying marks placed on the mail by Mrs. Jacobs, Lampson continues, there was technically no proof that the mail which was shown at trial to be stolen was the same mail found on the grass. Lampson concludes that this is a failure of proof as to him on the element of stolen mail.

Lampson would have us exclude the pieces of mail from evidence due to the alleged inadequacy in the chain of custody. However, it has been held that whether the Government has proven an adequate chain of custody goes to the weight of the evidence, rather than admissibility. E. g., United States v. Henderson, 588 F.2d 157 (5th Cir.), cert. denied, 440 U.S. 975, 99 S.Ct. 1544, 59 L.Ed.2d 794 (1979); United States v. White, 569 F.2d 263 (5th Cir.), cert. denied, 439 U.S. 848, 99 S.Ct. 148, 58 L.Ed.2d 149 (1978). Although this principle is usually applied in cases where there is a question about some change in the condition of the evidence between apprehension and testing, we believe it is equally applicable here.

The testimony at trial indicated that the box of mail was given by Mrs. Jacobs to one deputy, and later taken from a patrol car and given to Detective Blake by the same or another deputy. Courts need exercise greater care when the issue concerns the very identity of the evidence, rather than just possible changes in its condition. The Government's burden of proving each and every element of the crime cannot be diluted by unwarranted presumptions about the evidence it seeks to introduce. Although such heightened scrutiny is appropriate for chain of custody identification claims, automatic exclusion is not required. Whether or not the possible problem with the Government's proof is sufficiently serious to take it from the jury rests in the sound discretion of the trial judge.

Here, we observe that the chain of custody objection is technical at best. The box of letters were given to a deputy sheriff, and delivered by a deputy sheriff from a squad car. There was a very short inter-

---

**3.** The Government in its brief suggests that the filing of the notice of appeal was untimely, depriving this Court of jurisdiction to hear this case. United States v. Shillingford, 568 F.2d 1106, 1107 (5th Cir. 1978); United States v. June, 503 F.2d 442, 443 (8th Cir. 1974). It notes that the trial judge signed the Order of Judgment and Commitment on March 26, 1979, and Lampson's Notice of Appeal was filed on April 9, 14 days later.

Rule 4(b) of the Federal Rules of Appellate Procedure provides:

"In a criminal case the notice of appeal by a defendant shall be filed in the district court within 10 days after the entry of the judgment or order appealed from. . . . A judgment or order is entered within the meaning of this subdivision when it is entered in the criminal docket."

Fed.R.App.P. 4(b). Although the trial judge signed the order on March 26, an examination of the docket reveals the order was not entered until April 6. Thus, the April 9th Notice of Appeal was timely filed.

val that these letters were in the sheriff's custody, and there was no evidence that there were other letters for these to be confused with. Further, there is no reason offered why these pieces of mail might not be those found by Mrs. Jacobs. Thus, there was no abuse of discretion by the trial judge in allowing the jury to evaluate the weight of this alleged blind spot in the custody of the letters.

Lampson cites as supportive of his position *United States v. Panczko*, 353 F.2d 676 (7th Cir. 1965), *cert. denied*, 383 U.S. 935, 86 S.Ct. 1066, 15 L.Ed.2d 853 (1966); and *Smith v. United States*, 157 F.2d 705 (D.C. Cir.1946). It is true that in each of these cases, the court found problems with the identification of key pieces of evidence. In *Panczko*, though reversing and remanding for other reasons, the court specified that an unbroken chain of evidence be established with respect to a set of keys. And in *Smith*, there was uncertainty as to the identity of a watch, which the court found to be a failure of proof requiring exclusion of the evidence. In each of these cases, however, there was substantial uncertainty and confusion in the chain of custody and identity of the items. *Panczko* at 679; *Smith* at 705. We do not believe the objections offered by Lampson in this case rise to this level of error, and thus no automatic exclusion is warranted here.

### B. *Exclusion of Evidence*

Lampson attempted at trial to introduce the testimony of an attorney he had worked for a year before the post office incident. The attorney was to testify that Lampson had discussed his concern about his nephew Qualls' use of drugs and getting into trouble generally, and that he (Lampson) wanted to be sure that Qualls "went straight" and stayed out of trouble. The District Court sustained an objection to this testimony on the grounds that it was irrelevant.

Lampson argues that this testimony is relevant to show his state of mind—that he was not participating in the burglary but rather was trying to dissuade Qualls from continuing with it. Lampson had expressed the same concerns through his direct testi-

mony, and wanted to use the attorney's testimony to provide corroboration by a neutral, detached, and credible witness.

■ It is well established that a trial judge has broad discretion in assessing the relevancy of evidence. *United States v. Micklus*, 581 F.2d 612, 617 (7th Cir. 1978); *United States v. Bolin*, 514 F.2d 554, 558–59 (7th Cir. 1975). Although we may have been inclined to rule differently on the question of relevance, we are not to merely substitute our opinion for that of the trial judge. The ruling will only be reversed on a clear showing of abuse of discretion.

A question of relevancy must be raised in relation to the particular crime charged. Here, Lampson was indicted with two counts but convicted on only one, the second count. Thus, questions of relevancy of evidence based on count I (breaking and entering) are here mooted by the acquittal on that count, and we need only address the excluded testimony as it relates to count II (theft of mail).

■ Theft of mail under 18 U.S.C. § 1708 does include the element of intent to steal at the time the mail is taken. *Walker v. United States*, 342 F.2d 22, 25 (5th Cir.), *cert. denied*, 382 U.S. 859, 86 S.Ct. 117, 15 L.Ed.2d 97 (1965). However, the attorney's testimony was offered to corroborate Lampson's testimony about his state of mind upon entering the post office—his motivation for entering. The question here is narrow: whether it would have been error for the Court to exclude the attorney's testimony based upon its relevancy only to count II of the indictment.

■ Motivation or intent for entering the post office is separate and distinct from the intent associated with the taking of the mail. Lampson's purported concern for his nephew's behavior does not bear on his act of removing mail from a post office, and Lampson has not established this necessary connection in his argument before this Court. Thus, we find no reversible error in the exclusion of this testimony as it relates to count II of the indictment.

### C. *Sufficiency of Evidence.*

██ Lampson next argues that even if the pieces of mail were properly admitted, the evidence is insufficient for a jury to infer that it was he who dropped it. We reject this contention. A conviction may be upheld so long as there is sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S.Ct. 2781, 2788, 61 L.Ed.2d 560 (1979); *In re Winship*, 397 U.S. 358, 361–64, 90 S.Ct. 1068, 1071–73, 25 L.Ed.2d 368 (1970). Here, Mrs. Jacobs' testimony was that he left the post office carrying a box, fled upon their confrontation, and that a box and stolen mail were found near his footprints where he had been chased by a deputy. Viewing the evidence and all reasonable inferences therefrom in the light most favorable to the Government, *United States v. Brown*, 518 F.2d 821, 823 (7th Cir.), *cert. denied*, 423 U.S. 917, 96 S.Ct. 225, 46 L.Ed.2d 146 (1975), we conclude that there was sufficient evidence for the jury to properly find Lampson guilty on count II.

### D. *Speedy Trial*

██ Finally, Lampson argues that his Sixth Amendment right to a speedy trial was violated here, requiring dismissal. He asserts that the eight month period between his June, 1978 arrest and his February, 1979 trial violated this right.

A claim of an unconstitutional deprivation of a speedy trial must be assessed in light of the balancing test set forth in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2191, 33 L.Ed.2d 101 (1972). *United States v. Jackson*, 508 F.2d 1001, 1003 (7th Cir. 1975). *Barker* identifies four factors to be weighed: length of delay, the reason for delay, the defendant's assertion of his right, and prejudice to the defendant. This approach necessarily requires that speedy trial cases be addressed on an ad hoc basis.

The reason for the delay in this case was, first the trial calendar of the initial judge

assigned this case, and, second, his planned hospitalization during the month of November, 1978. Government's counsel was prepared to commence trial on both the September and October dates. While these reasons for delay must be weighed against the Government, *Barker*, 407 U.S. at 531, 92 S.Ct. at 2192, they are not in these circumstances weighed heavily. *See Jackson* at 1005. *United States v. Joyce*, 499 F.2d 9, 20 (7th Cir.), *cert. denied*, 419 U.S. 1031, 95 S.Ct. 512, 42 L.Ed.2d 306 (1974).

Lampson also suggests that his repeated requests for release upon reasonable bond, combined with readiness for trial, are the "functional equivalent of pressing his right to a speedy trial." While requests for release evidences a desire to be free of incarceration, they do not present the forceful pressing of the right to a speedy trial which would be persuasive here. *Jackson* at 1004. Lampson's demands for "reasonable bond" cannot be equated to assertion of a speedy trial right.

Finally, we must examine the prejudice to the defendant resulting from the delay. The Supreme Court has identified three relevant interests which the speedy trial right was designed to protect: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532, 92 S.Ct. at 2193. Lampson presses prejudice with respect to the first factor. Although Lampson was incarcerated until shortly before trial, he was ordered released on a signature bond in November, 1978. Lampson chose not to sign the bond until late January.[4] In light of his voluntary decision to remain in federal custody, and the lack of any showing of unavailable witnesses as evidence for his defense, we cannot accord great weight to his present claims of prejudice suffered by the delay.

On the whole, balancing the factors enunciated in *Barker*, 407 U.S. 514, 92 S.Ct. 2182,

---

4. Lampson was subject to state incarceration upon federal release pending state parole violation proceedings.

33 L.Ed.2d 101, we find no constitutional violation of Lampson's right to a speedy trial.

For the reasons expressed above, the judgment is affirmed.

AFFIRMED.