DOUCET, Judge.
Following a lengthy undercover investigation, the defendant, Haywood Franks, Sr., was arrested and charged on May 31, 1984 with distribution of a controlled dangerous substance, a violation of La.R.S. 40:967(A)(1). The defendant was arraigned on June 25, 1984, entered a plea of not guilty, and requested trial by jury.
On November 6th and 7th, 1984, the defendant was tried before a jury of twelve persons who returned a verdict of guilty as charged. On November 15, 1984, the trial court heard defendant’s motion for a new trial and motion for post-verdict judgment of acquittal. The trial court denied both motions. The defendant waived delays for sentencing and was then sentenced to serve four years at hard labor in the custody of the Department of Corrections, without benefit of parole, probation, or suspension of sentence. The defendant appeals his conviction, the denial of his motion for new trial, and the denial of his motion for post-verdict judgment of acquittal.
FACTS
On October 28, 1983, Deputy James Hayes of the Calcasieu Parish Sheriff’s Office and Trooper Randolph Johnson of the Louisiana State Police, were working an undercover narcotics investigation in DeQuincy, Louisiana. Deputy Hayes acted as purchasing agent, and Trooper Johnson as surveillance officer. The officers had previously arranged to purchase narcotics from Mike Ceasar. The officers testified that upon reaching the designated place in DeQuincy, Mr. Ceasar entered the officers’ vehicle, sat in the rear seat, reached into a leather-type flight bag, and produced a large package, later determined to be marijuana. The officers gave Mr. Ceasar $325.00. Deputy Hayes then asked whether Mr. Ceasar knew where they could buy some pills. Acknowledging that he knew where they could purchase the pills, Mr. Ceasar instructed the undercover officers to go to a store just down the street to see if “Hobson” was there. Deputy Hayes, Trooper Johnson, and Mr. Ceasar proceeded to that location. Mr. Ceasar pointed out a particular car and identified it as “Hob-son’s”. The officers parked their vehicle about ten feet away from “Hobson’s” car at a slight angle facing that car. They observed two people seated in the vehicle. Mr. Ceasar approached it. A man later identified as Haywood Franks got out of that car and conversed with Mr. Ceasar. Mr. Ceasar returned to the officers’ car and informed them that Franks would sell them some “T’s and Blue’s”, but they would have to meet later.
The officers returned to their previous location, parked on the street in front of Mr. Ceasar’s parents’ home, and waited for Mr. Franks. Eventually, Mr. Franks arrived in the same vehicle as he had been seen in earlier, and parked, according to Officer Johnson, about fifty feet in front of the officers’ car facing them. There were no lights on in the vehicle, but street lights lighted the area enabling Deputy Hayes to recognize Mr. Franks as the driver of the car in which they had seen him earlier. *226 Deputy Hayes then gave Mr. Ceasar $700.00 to purchase the pills. Mr. Ceasar approached Mr. Franks’ vehicle, reached through the driver’s window, and handed Haywood Franks the money. Deputy Hayes observed Mr. Franks hand Mr. Cea-sar a package. Mr. Ceasar then walked back to Trooper Johnson. Both officers inspected the package. Mr. Franks’ vehicle left the scene, passing right beside Deputy Hayes in plain view. Deputy Hayes clearly recognized the driver as Mr. Franks.
The transaction completed, the officers departed. Franks was not arrested at that time because the undercover investigation was not yet at an end. On May 31, 1984, Franks was arrested and charged with distribution of a controlled dangerous substance in violation of La.R.S. 40:967(A)(1).
NEW TRIAL AND MOTION FOR ACQUITTAL
Through these assignments, defendant argues that the trial court erred in denying his motion for a new trial and motion for acquittal. Under the Louisiana Code of Criminal Procedure, trial judges are not authorized to enter judgments of acquittal.
“Louisiana’s Code of Criminal Procedure does not authorize trial judges to enter judgments of acquittal in jury trials. La. Code Crim.Proc.Ann., Art. 778 (West Supp.1980); State v. Henderson, 362 So.2d 1358, 1367 (La.1978). Accordingly, a criminal defendant’s only means of challenging the sufficiency of evidence presented against him to a jury is a motion for new trial under La.Code Crim. Proc.Ann., Art. 851 ...” Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 971 footnote 1, 67 L.Ed.2d 30 (1981).
SUFFICIENCY OF THE EVIDENCE
The defendant argues that the trial court erred in denying the motion for new trial because the evidence was contrary to the verdict reached by the jury and that given the discrepancies in the testimony of state witnesses Johnson and Hayes, and the absence of testimony by an unidentified individual in the defendant’s vehicle at the time of the transaction, the jury could not have found the testimony credible enough to convict beyond a reasonable doubt. The defendant also argues that the trial court erred in that it failed to give defense witnesses the same credibility as the state’s witnesses. The defendant further asserts that the state did not prove that Michael Ceasar was not in sole control of the narcotics in question and that the state failed to prove its case beyond a reasonable doubt. All these arguments concern the sufficiency of the evidence to support the conviction and are therefore governed by the standard articulated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). That is:
“... whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.”
The defendant is charged with a violation of La.R.S. 40:967 A(l) which provides that:
“Except as authorized by this part, it shall be unlawful for any person knowingly or intentionally:
(1) To produce, manufacture, distribute, or dispense or possess with intent to produce, manufacture, distribute, or dispense, a controlled dangerous substance classified in Schedule II; ... ”
Accordingly, it was necessary for the state to prove that the defendant knowingly and intentionally distributed a controlled dangerous substance classified in Schedule II.
The testimony of the two undercover narcotics agents appears to demonstrate a clear picture of the events they observed on October 28, 1983. Their testimony appears to establish that they personally witnessed a Mr. Mike Ceasar purchase one bottle each of two kinds of pills, known together on the street as “T’s and Blue’s”, from defendant Franks. The officers gave Mr. Ceasar $700 in cash and observed as he approached defendant who, in exchange for the money, gave him two bottles of “T’s *227 and Blue’s”. The state introduced expert testimony which indicates that one bottle contained 100 Tripelemnamine tablets, which are not a controlled dangerous substance, and the other bottle contained 100 pentazocine tablets, which are a controlled dangerous substance, listed in Schedule IID. La.R.S. 40:964 II.D(2).
Both Michael Ceasar and one of his brothers, who claimed to have been present on that date, testified that the drug transaction described by the undercover officers never took place. However, it was for the jury, as trier of fact, to determine the credibility of witnesses as they testified before them.
“When there is conflicting testimony as to a factual matter such as this, the question of the credibility of the witnesses is within the sound discretion of the trier of fact. His factual determinations are entitled to great weight and will not be disturbed unless clearly contrary to the evidence.”
State v. Klar, 400 So.2d 610 (La.1981). See also, State v. Cobbs, 350 So.2d 168 (La.1977).
Defendant argues that the testimony demonstrated that it was too dark at 7:30 P.M. that night for Officer Hayes to observe the transaction, and that the court should take judicial notice of the fact that it was dark at 7:30 P.M. on an October night. Defendant also asserts that the testimony of Officers Hayes and Johnson was not consistent or was conflicting. The record supports the jury’s finding that the officers were able to observe the drug transaction and to identify defendant as the drug “pusher”. The witnesses testified that the area was lighted by a street light and when defendant drove away, he passed right beside the officers’ car. The jury was presented with enough evidence to determine that defendant did indeed sell drugs to Mr. Ceasar.
“The trial court’s determination that the state’s witnesses were more credible will not be disturbed absent a showing that it is not supported by the evidence. State v. Haynie, 395 So.2d 669 (La.1981).” State v. Montegut, 471 So.2d 286 (La.App. 4th Cir.1985).
Defendant argues that because Mr. Cea-sar was not searched prior to making the alleged deal with defendant Franks, it is entirely possible that Ceasar already had the drugs on his person. Mr. Ceasar was totally unaware at the time of this transaction that he was being used as a middleman for a drug deal between the defendant and the undercover agents. It is preposterous to suggest that the undercover agents would have to search Mr. Ceasar before letting him make the deal with Franks on their behalf. The state is required only to prove their case beyond a reasonable doubt, not beyond all possible doubt. Two eyewitnesses testified as to their observations of the transaction. The undercover officers consummated a drug deal with Mr. Ceasar. They then arranged for the purchase of pills which he said he did not have but could get for them. The officers and Mr. Ceasar scheduled a rendezvous with Franks. Mr. Ceasar was given $700.00 which he, in turn, gave Franks. The officers observed Mr. Franks hand over to Ceasar two pill bottles in return for the money.
When viewed in a light most favorable to the prosecution, the evidence presented at trial establishes beyond a reasonable doubt that the defendant did indeed sell the Pentazocine to Mr. Ceasar, who was acting for the undercover officers.
COMMENTS REGARDING DEFENSE ATTORNEY
The defendant argues that the trial court erred in allowing Officer Johnson, under cross-examination by defense, to mention that defense counsel was a “high power lawyer”. The defendant argues that this remark prejudiced the defendant in that it conveyed to the jury the idea that the defendant had much to hide. The only instance in the record of any remark resembling this phrase is Officer Johnson’s response under cross-examination concerning the state’s attempt to establish a pat *228 tern of distribution before arresting suspects:
“... From reading the general newspaper, on a one-time buy, the people came in and they got a real sharp lawyer, ...”
It does not appear that the remark was in any way out of order or uncalled for and was not even directed toward defense counsel in this case, but was a general statement concerning why defendant was not arrested immediately, but was instead investigated undercover for quite a while. There is no showing of any prejudice to defendant whatsoever. In addition, defendant raised no objection to the remark in spite of the fact that the remark was made under cross-examination.
VIOLATION OF RULE OF SEQUESTRATION
Defendant contends that Officer Dale talked to and intimidated witnesses under the rule of sequestration.
It should first be noted that this officer was not under the rule of sequestration. Under La.C.Cr.P. art. 764, the court is given authority to order that the witnesses be excluded from the courtroom in order that they may not hear or see the proceedings and with instructions to refrain from discussing the facts of the case or their testimony or the testimony of other witnesses. According to the official revision comment (b) “this article does not disqualify the witness for disobedience”, but disobedience may constitute a direct contempt of court as provided for in La.C.Cr.P. art. 21(3). Thus, if any of the witnesses did in fact discuss the case with Officer Dale, that conduct may have constituted contempt of court, but would not have disqualified the witness from testifying.
Be that as it may, it appears from Officer Dale’s testimony that his conversation in the court corridors with Mr. Ceasar was nothing of the sort alleged by defendant. Officer Dale testified:
“We was really talking about coon hunting, and a friend of ours, a mutual friend, that had got in a car wreck and was paralyzed in the hospital; and then Mike [Ceasar] was just telling me that ... about the case that he was involved in. I told him I don’t know anything about your case, I had nothing to do with it, which I had no surveillance, or anything, on either one of these cases. I’m not familiar with them.”
"... I told him the best thing he could do is go talk to the District Attorney, and cut his plea bargain with them or whatever he wanted to do. There was nothing I could do about it."
Officer Dale, who was not a witness in this case, merely chanced upon his friend, Mr. Ceasar, who asked him as a friend who was an officer of the law, what to do about his situation. It may be that Ceasar’s discussing the case with Officer Dale constitutes contempt of court, but that as previously mentioned, would not affect the admissibility of Mr. Ceasar’s testimony.
IMPROPER IMPEACHMENT
It is completely unclear what the defendant attempts to argue through this assignment of error. It appears that the defendant is attempting to argue that the state attempted to impermissibly introduce evidence of arrests rather than of convictions to impeach a witness. However, there appears to be no incidence of this in the record. The defendant’s argument, though not very clearly articulated, has no basis on the record and certainly does not demonstrate any prejudicial effects on the defendant.
CHAIN OF CUSTODY OF EVIDENCE
Through this assignment defendant argues that the trial court erred in admitting the Pentazocine into evidence when the district attorney failed to establish an unbroken chain of custody. The defendant asserts that because Mr. Simon, the chemical analyst at the crime lab, did not know who put the pills on his desk to be examined, there was no way to insure that the pills examined were the same ones Mr. Ceasar gave the undercover agents. *229 Therefore, the state failed to prove the chain of custody and the evidence is therefore inadmissible.
The state, however, need not prove an unbroken chain of custody.
“However, a continuous chain of custody need not be established if the evidence as a whole establishes that it is more probable than not that the object introduced is the same as the object originally seized by the police officers. State v. McCabe, 420 So.2d 955 (La.1982). Moreover, any defect in the chain of custody goes to the weight of the evidence rather than to admissibility. State v. Sam, 412 So.2d 1082 (La.1982).” State v. Guillory, 438 So.2d 1256 (La.App. 3 Cir.1983).
See also State v. Kirkley, 470 So.2d 1001 (La.App. 1st Cir.1985).
The record is replete with testimony regarding the provenance of the pills beginning with a search of the officers and their vehicle prior to leaving headquarters; testimony as to what the undercover agents did to secure and mark the evidence; testimony of everyone involved in the removal and transport of the evidence to the crime lab for identification; testimony as to custody of the pills at the crime lab and then back to headquarters. The testimony at trial establishes that it is more probable than not that the pills introduced into evidence, identified as Pentazocine, were the same pills the officers received and examined on the scene and again identified in court. Moreover, the record appears to establish a very clear and unbroken chain of custody.
The lab chemist who actually analyzed the pills testified that the evidence was turned over to the crime lab and in turn was turned over to the chief chemist, who checked it out to give it to Mr. Simon, who kept it in his evidence locker. Therefore, we believe that the evidence as a whole establishes that the pills introduced were the same originally bought by the officers.
PRIOR ARRESTS
Through this assignment defendant argues that the trial court erred in allowing the state’s witness, Officer Johnson, to indicate to the jury that defendant had prior arrests. Defendant argues this was accomplished when Officer Johnson testified that he had seen Mr..Frank’s picture on several occasions before the alleged drug buy. It appears that the defendant is reading something into the officer’s testimony. When asked if the witness “had ever seen Mr. Franks prior” to this encounter, he responded:
“No, I ... I will correct that. One time when we were reviewing possible known ... Well, I’ve never had any conversation with him prior to that time.”
This does not appear to constitute testimony of prior arrests. Moreover, the record does not indicate that the defendant raised any objection to this remark, though the prosecutor did abruptly end the testimony and asked for a bench conference. Therefore, we find no error.
FAILURE TO TIMELY OBJECT
The defendant contends that it was error to allow Officer Johnson to mention previous drug buys from Michael Ceasar; to allow a remark that Pentazocine is a substitute for Cocaine; to allow a statement in closing arguments that the drugs were sold in sets; and to allow Officer Dale to state that everyone knew he wanted Haywood Franks’. However, these assignments of error will not be addressed because the defendant failed to object to these alleged errors at trial, thereby failing to preserve the issues for appellate review. La.C.Cr.P. art. 841.
For the above reasons, the conviction is affirmed.
AFFIRMED.