554 A.2d 429

**Rynell Percy MARTIN**

v.

**STATE of Maryland.**

**No. 936, Sept. Term, 1988.**

Court of Special Appeals of Maryland.

March 6, 1989.

Bradford C. Peabody, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief) Baltimore, for appellant.

Thomas K. Clancy, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Alexander Williams, Jr.,

State's Atty., for Prince George's County, Upper Marlboro, on the brief), for appellee.

Submitted before MOYLAN, ALPERT and POLLITT, JJ.

ALPERT, Judge.

This is yet another chapter in the annals of "chain of custody" appeals.  On May 27, 1987, Officers Hamilton and Richards of the Prince George's County Police Department observed a package of "Tops" rolling paper and a tinfoil packet on the ground near Rynell Percy Martin's car.  Officer Richards then noticed a smokey haze in the car's interior and smelled burning marijuana and PCP.  When the officer opened the door, he found a foil packet on the sill and ten more packets in a plastic bag under a floormat.  A search of Martin, appellant, at the police station yielded a partially burned cigarette made from "Tops" rolling paper that smelled of marijuana and PCP.  The items were placed in a lock seal envelope and put in the narcotics mailbox at the station.

A civilian employee of the police department, George Roby, took the envelope from the mailbox and brought it to the property warehouse.  Corporal Anthony Coleman of the Maryland State Police Property Section received the custody statement and the envelope with the drugs on June 1, 1987.  He put the envelope in a vault until he could transport it to the Pikesville laboratory.  Later that day, he delivered the drugs to Trooper Ron Presnell, the lab intake officer.  Presnell observed as Coleman opened the envelope.  The two discovered 12 tinfoil wrappers, which contained a green substance (suspected PCP), rather than the 11 indicated on the chain of custody statement.  Trooper Presnell did not sign the statement, but did hold the evidence until the chemist took it to be analyzed; he received it back again after the analysis.  A second individual, Trooper Flowers, also accepted and held the drug evidence before and after the analysis.  Because of their similar duties, Flowers

would sometimes return evidence for Presnell if he was in court and vice versa.

The chemist, Jocelyn Sulit–Proctor, did an analysis of the substance and found PCP (phencyclidine) and marijuana. She resealed the envelope after she finished the tests. At trial, she reopened it and testified that the seals had not been tampered with.

On September 21, 1987, Coleman retrieved the drugs from Trooper Flowers at the Pikesville lab. He checked to be sure the wrapping was intact, checked the signatures on the seals, checked for tampering with the envelope, and then signed for the package. He returned the drugs to the vault where they remained until he gave the package to Officer Hamilton on the day of the trial. Hamilton verified this in his testimony and said the drugs were in substantially the same condition as they had been when confiscated from the appellant.

Appellant's counsel objected when the State offered into evidence the custody form and the lab report (State's Exhibit No. 1) and the envelope with the 12 foil packets and the cigarette (State's Exhibit No. 6). Counsel based his objection on the fact that the State had not established the chain of custody for the two exhibits. According to appellant's counsel, one of the individuals who handled the evidence, Trooper Flowers, did not testify at trial. The court overruled the objection and admitted the evidence. Appellant was convicted of possession of PCP in sufficient quantity to indicate an intent to distribute and was sentenced to 8 years in the Division of Correction. Appealing that judgment, he raises a single issue:

> Did the trial court err in admitting into evidence the chain of custody log, the lab report, the 12 tinfoil packets, and the partly burnt cigarette, where the State failed to produce a witness in the chain of custody, Trooper Flowers?

Md.Cts. & Jud.Proc.Code Ann. § 10–1001 (1984 Repl.Vol.) allows the chemical analysis report of an alleged controlled

dangerous substance to be admitted as *prima facie* evidence in a criminal proceeding without the chemist appearing at trial, and provides in pertinent part that:

> A report signed by the chemist or analyst who performed the test or tests as to its nature is *prima facie* evidence that the material delivered to him was properly tested under procedures approved by the Department of Health and Mental Hygiene, that those procedures are legally reliable, that the material was delivered to him by the officer or person stated in the report, and that the material was or contained the substance therein stated, without the necessity of the chemist or analyst personally appearing in a court.

Section 10–1002 has a similar provision with regard to the chain of custody report. The version in effect at the time of the trial was as follows:

> For the purpose of establishing, in a criminal or civil proceeding, the chain of physical custody or control of evidence consisting of or containing a substance tested or analyzed to determine whether it is a controlled dangerous substance defined under Article 27 of this Code, a statement signed by each successive officer or other person having the custody of the evidence that he delivered it to the person indicated on or about the date stated is prima facie evidence that the person had custody and made the delivery as stated, without the necessity of a personal appearance in court by the person signing the statement. The statement shall contain a sufficient description of the material or its container so as to distinguish it as the particular item in question and shall state that the material was delivered in essentially the same condition as received. The statement may be placed on the same document as the report provided for in § 10–1001. Nothing in this section precludes the right of any party to introduce any evidence supporting or contradicting the evidence contained in or the presumption raised by the statement.

Section 10–1003, however, states that §§ 10–1001 and 10–1002 do not apply where defendant makes a written demand for the presence of the chemist or analyst or any person in the chain of custody as a prosecution witness. Those sections apply—that is, the chemist's report and the chain of custody form are *prima facie* evidence—only if they are given to the defendant 10 days before trial and the defendant does not make a written request for the production of the chemist or those persons in the chain of custody as witnesses. In this case, appellant exercised his right to demand that the chemist, analyst and any other person in the chain of custody appear as witnesses.

The language of § 10–1002 suggests that only those who had "custody" of the evidence were required to sign and, further, that only those who signed the chain of custody statement were to be considered part of the chain. The record does not indicate that Trooper Flowers did anything other than hand Corporal Coleman the drugs on September 21, 1987. We distinguish between bare possession and custody. The record indicates that Flowers had bare possession, and we believe that this did not amount to custody within the meaning of § 10–1002. Thus, only those who actually had "custody" need sign the form and only those who signed need testify at trial. It appears that § 10–1002 has been interpreted as including only those who signed the statement as being within the chain of custody.

In *Gillis v. State*, 53 Md.App. 691, 456 A.2d 89 *cert. denied*, 296 Md. 172 (1983), the State failed to produce as witnesses two individuals who were listed on the chain of custody statement. The court found the legislature "provided that for the purpose of establishing custody a statement signed by those persons having custody of the evidence must be delivered to the next person on the list. This is *prima facie* evidence that the person had custody and made delivery as stated...." *Id.* at 698.

In *Colesanti v. State*, 60 Md.App. 185, 481 A.2d 1143 (1984), *cert. denied*, 302 Md. 570, 489 A.2d 1129 (1985), the arresting officer and the chemist (the only people listed on

the chain of custody form) did not testify until after the drugs were admitted into evidence. We distinguished *Gillis,* and held that, although the judge committed error in admitting the drugs into evidence prior to testimony, it was harmless because both eventually testified.

In *Parker v. State,* 72 Md.App. 543, 531 A.2d 1035 (1987), *cert. granted,* 311 Md. 698, 537 A.2d 262 (1988), *certiorari dismissed as being improvidently granted,* June 7, 1988, 312 Md. 657, 541 A.2d 993, the defendant made a written demand under § 10–1003 that the chemist or analyst and others in the chain of custody appear as witnesses. The court held "the State failed to establish a complete chain of custody when it did not call the laboratory technician who had signed the statement as a prosecution witness ..." and reversed the judgment of the trial court. *Id.* at 549–50, 531 A.2d 1035.

In *Bell v. State,* 66 Md.App. 294, 503 A.2d 1351 (1986), the chemist's report was admitted into evidence over appellant's objection when the State established the chain of custody by calling as witnesses those who actually handled the cocaine. Appellant objected because he had not demanded their presence pursuant to § 10–1003 and, relying on *Gillis,* contended the admission was error. The court found *Gillis* "inapposite" for a number of reasons and went on to explain that §§ 10–1001—1003 were inapplicable as well because the report was not furnished to defendant as required in § 10–1003. As a result, "the State was required to prove the chain of custody and the validity of the analysis by calling as witnesses the chemist and such other persons as handled the suspected cocaine...." *Id.* at 302, 503 A.2d 1351.

Implicit in the *Bell* decision, argues the State, is the recognition that the State would only have to call those who were signatories of the form if it had otherwise complied with the statutory requirements. The State goes on to assert:

If the State were required to call all of those witnesses who actually handled the drugs after complying with the

statute upon demand by the accused, there seems little reason to have the statute because the number of chain of custody witnesses are not diminished.

Presuming the legislature intended to reduce the State's burden, the State further contends that interpreting the statute to mean that everyone who came in contact with the drugs had to testify defeats the statute's purpose. We agree.[1] The legislature enacted §§ 10–1001—1003 in 1974. Prior to that time, the court used the legal standard in *Blake v. State*, 15 Md.App. 674, 683, 292 A.2d 780 (1972)— whether it is reasonably probable that no tampering occurred—to determine whether a proper chain of custody of physical evidence is established. A similar standard is used in the federal courts and in the courts of those states where chain of custody is not defined by statute.

For example, in *United States v. Howard–Arias*, 679 F.2d 363 (4th Cir.1982), the Court of Appeals held that the failure of one person in the chain of custody to testify at trial did not make the marijuana inadmissible as evidence.

---

**1.** We observe that a recently amended § 10–1002 would clearly eliminate a person in Trooper Flowers' position. That section was amended by adding a subsection (a) to read as follows:

(a) In this part:

(1) "Chain of custody" means:

(i) The seizing officer;

(ii) The packaging officer; if the packaging officer is not also the seizing officer; and

(iii) The chemist or other person who actually touched the substance and not merely the outer sealed package in which the substance was placed by the law enforcement agency before or during the analysis of the substance; and

(2) "Chain of Custody" does not include a person who handled the substance in any form after analysis of the substance.

The amendment took effect on July 1, 1988 about six weeks after the trial in this case was held and, of course, does not apply to the proceedings *sub judice.* Under this new definition, had it been applicable, Flowers would not be considered part of the chain of custody because he did not have direct contact with the drugs—he handled the envelope only after the contents had been analyzed and returned to lock seal envelope—and he did not sign the chain of custody statement.

The court explained the chain of custody requirement as follows:

> The "chain of custody" rule is but a variation of the principle that real evidence must be authenticated prior to its admission into evidence. *See* Fed.R.Evid. 901; McCormick, *Handbook on the Law of Evidence* § 213 (2d ed. E. Cleary ed. 1972). The purpose of this threshold requirement is to establish that the item to be introduced, i.e., marijuana, is what it purports to be, i.e., marijuana seized from the "Don Frank." Therefore, the ultimate question is whether the authentication testimony was sufficiently complete so as to convince the court that it is improbable that the original item had been exchanged with another or otherwise tampered with. *United States v. Brewer*, 630 F.2d 795 (10th Cir.1980). Contrary to the appellant's assertion, precision in developing the "chain of custody" is not an iron-clad requirement, and the fact of a "missing link does not prevent the admission of real evidence, so long as there is sufficient proof that the evidence is what it purports to be and has not been altered in any material aspect." *United States v. Jackson*, 649 F.2d 967 (3d Cir.), *cert. denied*, 454 U.S. 871, 1034, 102 S.Ct. 341, 574, 70 L.Ed.2d 176, 479 (1981); *States v. Mullins*, 638 F.2d 1151 (8th Cir.1981); *U.S. v. Brewer, supra; United States v. Lampson*, 627 F.2d 62 (7th Cir.1980). Resolution of this question rests with the sound discretion of the trial judge....

*Id.* at 366. *See also U.S. v. Doddington*, 822 F.2d 818 (8th Cir.1987) (no abuse of discretion where drugs were admitted as evidence despite the failure of one person in the chain of custody to testify); *U.S. v. Williams*, 809 F.2d 75 (1st Cir.1986) (no abuse of discretion in admitting the drugs as evidence when a person in the chain of custody failed to testify and there was no indication the drugs had been altered).

State court decisions in those states where the chain of custody is not defined by statute parallel those in the federal cases. For instance, in *Commonwealth v. Cugnini,*

307 Pa.Super. 113, 452 A.2d 1064 (1982), police seized from defendant's home drugs and paraphernalia associated with the use or sale of drugs. The trial court found the "flaws in the chain of custody of the ... evidence so destroyed its probative value as to render it insufficient as a matter of law to support a verdict of guilty." *See id.*, 452 A.2d at 1065. The Superior Court explained that it is unnecessary for each individual who handled the evidence to testify nor should the Commonwealth have to eliminate every conceivable possibility of tampering. It is not required to show a complete chain of custody as long as the evidence established a reasonable inference that the exhibits at trial are the same as when they were first received. Weaknesses in the chain of custody affect the weight of the evidence rather than its admissibility. *See also Palmer v. State*, 250 Ga. 219, 297 S.E.2d 22 (1982) (evidence substantially unchanged from the time it was seized until the time of trial is admissible even though one person in the chain of custody did not testify at trial).

In *State v. Comeaux*, 505 So.2d 220 (La.App. 3 Cir.1987), defendant argued that a bag of marijuana and the forensic report identifying it as such should not have been admitted as evidence at trial because the chain of custody was not established in a step by step fashion. In examining the record, the appellate court found that the evidence custodian was the only person who did not testify. It held, as it did in *State v. Franks*, 483 So.2d 224 (La.App. 3rd Cir.1986), that the State need not establish a continuous chain of custody if the evidence, when viewed as a whole, makes it more likely than not that the exhibit introduced is the same as that originally seized. The court further stated that any gap in the chain would affect only the weight of the evidence rather than its admissibility. *See also State v. Ourso*, 502 So.2d 246 (La.App. 3 Cir.1987), *cert. denied*, 505 So.2d 1138 (1987) (chain of custody established where lab technician did not testify because he was no longer employed by crime lab and no longer lived in the area); *Stevens v. State*, 506 So.2d 373 (Ala.Cr.App.1986) (chain of

custody sufficiently established to assure marijuana was authentic where two witnesses who received the substance after it had been analyzed and identified as marijuana did not testify at trial); *Robinson v. State,* 716 P.2d 364 (Wyo. 1986) (chain of custody adequately established to admit drugs into evidence even though evidence custodian did not testify); *People v. Nimmons,* 129 A.D.2d 743, 514 N.Y.S.2d 502 (1987) (State did not have to produce as witnesses postal employees who handled package or the employee who had received it at the laboratory 11 years before the trial).

The record in this case indicates the evidence admitted at trial was substantially the same as it was when taken from the appellant. Further, Trooper Flowers handled the evidence only after the chemist had analyzed the substances and found marijuana and PCP, *see Stevens v. State, supra;* he did not sign the chain of custody statement. Those facts lead us to conclude that the trial court was correct in admitting the evidence despite the failure of one person who had contact with the evidence to testify at trial.

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.