554 A.2d 1280

**Vincent Craig WILKINSON**

v.

**STATE of Maryland.**

**No. 785, Sept. Term, 1988.**

Court of Special Appeals of Maryland.

March 29, 1989.

Julia Doyle Bernhardt, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellant.

Richard B. Rosenblatt, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Alexander Williams, Jr.,

State's Atty. for Prince George's County of Upper Marlboro, on the brief), for appellee.

Submitted before MOYLAN, GARRITY and FISCHER, JJ.

GARRITY, Judge.

The sole issue presented in this case is whether a chemist's report and an envelope containing cocaine and marijuana should have been excluded from evidence because the State failed to produce one of the persons in the chain of custody.

On the early morning of October 10, 1987, Officer T.B. Keifline of the Greenbelt City Police was patrolling Maryland Route 201. A little after 1:00 a.m. he observed a Volkswagen traveling 72 miles per hour in a 50–mile–per–hour speed zone. He stopped the Volkswagen, and when he approached it he smelled a strong odor of marijuana. Vincent Craig Wilkinson, the appellant, was in the driver's seat. The officer arrested the appellant and searched the car. In the course of his search, the officer found a suspected marijuana cigarette and fifteen zip lock plastic bags of suspected cocaine. He seized the suspected substances and had them chemically analyzed. The chemical analysis confirmed that the substances were marijuana and cocaine.

The appellant was convicted of possession of cocaine with intent to distribute. He argues that the chemist's report and the seized substances should not have been received into evidence because the State failed to produce one of the persons in the chain of custody.

The following evidence regarding chain of custody was received.

Officer T.B. Keifline testified that after he arrested the appellant, he took the appellant and the seized evidence to the Greenbelt station. He kept the evidence in his possession for the several hours it took him to complete his paper work. Ultimately, he put the evidence into an envelope, sealed the envelope and stapled it at the top. He then put

the envelope into the evidence mail box. He also, on that same day, October 10, 1987, created the chain of custody form. When he left the envelope in the mail box, he made the first entry on the chain of custody form.

No evidence was offered to explain what happened to the envelope between October 10, 1987 and October 17, 1987. On October 17, 1987, Officer Patrick McAndrew, the administrative officer in charge of the Greenbelt police station property room, procured the envelope from the evidence mail box and put it into the drug safe. It remained in the drug safe until the morning of November 25, 1987. On that morning the envelope was transported to the Maryland State Police criminal laboratory in Pikesville for a chemical analysis. Officer McAndrew testified that at 8:55 a.m. he turned the envelope over to Cadet Deborah Weatherholtz. Cadet Weatherholtz then drove to Pikesville to deliver the envelope. The chain of custody form shows that she turned the envelope over to Corporal Martin Flowers at the Pikesville office at 10:13 a.m. According to Officer McAndrew, it is normal for the drive from Beltsville to Pikesville to take about one and one-half hours.

When Corporal Flowers received the envelope, it was sealed. He opened it and verified that it contained fifteen packets of white powder and one cigarette. He then resealed the envelope and put it in the Pikesville property vault.

The envelope remained in the property vault from November 25, 1987 until February 24, 1988. At 9:30 that morning, Sandra Hartsock, a chemist for the Maryland State Police, removed the envelope from the Pikesville property vault. She tested its contents and determined that the fifteen bags contained cocaine and that the cigarette was marijuana. She finished her testing by the early afternoon. When she finished her testing, she resealed the envelope and at 2:00 p.m. returned it to the property vault.

The envelope remained in the Pikesville property vault until March 9, 1988 when it was removed by Corporal

Flowers and turned over to Cadet Croissette. Cadet Croissette then took the envelope back to the Greenbelt station. When Cadet Croissette returned to the Greenbelt station, she gave the envelope to Officer Thomas Kemp. Officer Kemp put the envelope in the drug safe. The envelope remained in the safe until its use in court.

At the trial of this case, Officer Keifline examined the envelope and its contents and opined that except for the markings made by the people who had opened and resealed the envelope, both the envelope and its contents appeared the same as they had on October 10, 1987.

Everyone in the chain of custody except Cadet Weatherholtz testified at the appellant's trial. Cadet Weatherholtz was not called because she was physically unable to appear in court. Both through testimony and documentary evidence it was explained that Cadet Weatherholtz had contracted Gideon Bara disease. This disease, which affects the nervous system, had caused Cadet Weatherholtz to be ninety percent paralyzed. At the time of trial she was in the George Washington Hospital intensive care unit on a life support respirator.

Prior to trial the appellant requested the State to produce in court "all members of the chain of custody." This request triggered the provisions of Courts and Judicial Proceedings Article 10–1001 through 1003. In *Parker v. State,* 72 Md.App. 543, 545–46, 531 A.2d 1035 (1987), *cert. dismissed,* 312 Md. 657, 658, 541 A.2d 993 (1988), we interpreted § 10–1003 to mean that anyone who ever had physical custody of the substances was a part of the chain of custody. Thus, according to the interpretation of § 10–1003 we set forth in *Parker,* Cadet Weatherholtz was part of the chain of custody. The question here is whether our *Parker* interpretation should apply in this case.

Recently, in *Sharp v. State,* 78 Md.App. 320, 552 A.2d 1367, we stated that "the goal of statutory construction is, of course, to ascertain and carry out the real legislative intent of an enactment, consistent, however, with its pur-

pose." At the time *Parker* was decided Courts and Judicial Proceedings Article 10–1003 read:

> In a criminal proceeding, the prosecution shall, upon written demand of a defendant filed in the proceeding at least five days prior to a trial in the proceeding, require the presence of the chemist, analyst, or any person in the chain of custody as a prosecution witness. The provisions of §§ 10–1001 and 10–1002 are applicable in a criminal proceeding only when a copy of the report or statement to be introduced is mailed, delivered, or made available to counsel for the defendant or to defendant personally when he is not represented by counsel, at least ten days prior to the introduction of the report or statement at trial.

During the legislative session following our *Parker* decision the Legislature rewrote § 10–1002 and in doing so re-defined the term "chain of custody." The revised § 10–1002 now reads:

> (a) In this part:
>
> > (1) "Chain of custody" means:
> >
> > > (i) The seizing officer;
> > >
> > > (ii) The packaging officer, if the packaging officer is not also the seizing officer; and
> > >
> > > (iii) *The chemist or other person who actually touched the substance and not merely the outer sealed package in which the substance was placed by the law enforcement agency before or during the analysis of the substance;* and
> >
> > (2) "Chain of custody" does not include a person who handled the substance in any form after analysis of the substance. (Emphasis added).

It is clear from the Legislature's prompt repeal and revision of § 10–1002 that it never intended that couriers should be part of the chain of custody. Thus, according to the Legislature's express intent Cadet Weatherholtz was not part of the chain of custody. Since Cadet Weatherholtz was not a part of the chain of custody, the State's failure to

produce her at trial did not render the State's chain of custody proof inadequate.

In *Martin v. State*, 78 Md.App. 541, 554 A.2d 429, (1989), we ruled that a property room custodian who, after the chemical analysis had been completed, handed a sealed package of controlled dangerous substance to a courier is not considered to have had custody of the controlled dangerous substance within the meaning of § 10–1002. As a consequence, such property room custodians are not part of the chain of custody. Because of this, these custodians do not have to be produced in court when a defendant demands proof of the chain of custody. In the instant case we are concerned with a courier who, like the custodian in *Martin*, merely possessed the sealed package. The courier possessed the package, but did not have custody of it as defined by § 10–1002. As a consequence, the State's proof of the chain of custody was not invalidated by virtue of the fact that Cadet Weatherholtz did not testify.

We observed in *Hawkins v. State*, 77 Md.App. 338, 347, 550 A.2d 416 (1988) "the test Maryland Courts utilize in examining the sufficiency of the chain of custody, is whether there exists the 'reasonable probability that no tampering occurred.'" The evidence presented in this case shows that it is unlikely that tampering occurred. We hold that the State presented adequate proof of the chain of custody to justify the admission of the chemist's report into evidence.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.