602 So.2d 28 (1992)
STATE of Louisiana, Plaintiff-Appellee,
v.
Ronald J. SHILLOW, Defendant-Appellant.
No. CR 91-1090.
Court of Appeal of Louisiana, Third Circuit.
May 20, 1992.
*29 Guy O. Mitchell, Ville Platte, for defendant-appellant.
J. William Pucheu, Dist. Atty., Ville Platte, for plaintiff-appellee.
Before DOUCET, LABORDE and CULPEPPER[*], JJ.
LABORDE, Judge.
In the present case, defendant, Ronald J. Shillow, was arrested for distribution of crack cocaine within one thousand feet of school property. After trial on the merits, defendant was convicted as charged and sentenced to the minimum sentence allowable of fifteen years hard labor without benefit of probation, parole, or suspension of sentence and a fine of $15,000.00. Defendant now appeals his sentence. We affirm finding no error by the trial court.

FACTS
On February 8, 1991, defendant, Ronald Shillow, was charged by bill of information with two counts of distribution of cocaine within one thousand feet of a school, violations of La.R.S. 40:967A(1) and La.R.S. 40:981.3 and one count of distribution of cocaine, a violation of La.R.S. 40:967A(1).
*30 The state elected to try defendant at trial only on count one, distribution of cocaine within one thousand feet of a school. On May 21, 1991, a jury found defendant guilty as charged. He was sentenced on September 6, 1991, to fifteen (15) years at hard labor without benefit of probation, parole or suspension of sentence and ordered to pay a fine of fifteen thousand dollars ($15,000.00). Defendant now appeals, alleging nine (9) assignments of error.

ASSIGNMENTS OF ERROR NUMBERS ONE AND TWO
These assignments of error are interrelated and will therefore be discussed together. By Assignment of Error No. One, defendant alleges he was convicted by virtue of an improper and unconstitutional application of the "school zone" statute. By Assignment of Error No. Two, defendant alleges the judge improperly denied his motion to quash the bill of information based on the above described grounds.
La.R.S. 40:981.3 states in pertinent part:
A. Any person who violates a felony provision of R.S. 40:966 through R.S. 40:970 of the Uniform Controlled Dangerous Substances Law while on any property used for school purposes by any school, within one thousand feet of any such property, or while on a school bus shall, upon conviction, be punished in accordance with Subsection E.
B. Lack of knowledge that the prohibited act occurred on or within one thousand feet of school property shall not be a defense.
C. For purposes of this Section:
(1) "School" means any public or private elementary, secondary, or vocational-technical school in Louisiana.
(2) "School property" means all property used for school purposes, including but not limited to school playgrounds.
D. A violation of this Section within one thousand feet of school property shall not include an act which occurs entirely within a private residence wherein no person seventeen years of age or under was present.
Defendant argues since the legislature did not intend for the statute to apply to adults involved in drug transactions which take place in individual homes, it follows the legislature also did not intend for it to apply to transactions in bars or other areas where adults congregate after school hours. Defendant claims the evidence presented at trial showed if any transaction took place, it was at a bar after school hours and involved adults over the age of twenty-one (21). Therefore, this statute forcing one to get an enhanced penalty for activities that may have been near a school but had nothing to do with the school and after school hours involving adults, should not be punishable and is an unconstitutional application of the statute.
It should be noted defendant never explicitly states La.R.S. 40:981.3 is unconstitutional. He merely states the application of the statute in the instant case is unconstitutional. However, defendant does cite several cases invalidating statutes for overbroadness or arbitrariness. A logical assumption is that defendant is alleging the statute is overbroad. It should also be noted the Attorney General's office was given an opportunity to respond to this constitutionality attack pursuant to La.R.S. 13:4448. However, a response was not received by this court within the designated time. Therefore, the constitutionality of the statute will be addressed by this court.
Defendant's extension of section D of the statute is without merit. Section D refers to an act which occurs entirely within a private residence, and even if this court were to extend section D to include an activity within a bar, defendant's assertion that the transaction occurred inside a bar is not supported by the facts. Officer Comeaux, who was working undercover with a confidential informant (CI) on November 1, 1990, testified they observed defendant on the side of the road in front of a bar. As Officer Comeaux slowed down in the vehicle, defendant flagged them down. The officer then made the deal to purchase crack cocaine. Comeaux and the CI were directed to pull into the side parking lot of Reed's Pharmacy, approximately one-half *31 of a block from the bar. Defendant asked to see the money, walked down an alley, went inside the back of the bar, and returned with the cocaine. The transaction took place in front of the vehicle in the parking lot.
Admittedly, the transaction did occur after school hours. Officer Comeaux testified it was approximately 7:45 p.m. and that it was dark outside. Comeaux also testified only adults were present. However, the evidence is clear that defendant distributed cocaine outside in a parking lot. This is clearly distinguishable from section D, which involves transactions "entirely within a private residence". In those instances, there is no danger of school children being near the drug transaction because it takes place completely within the confines of a private dwelling. In the instant case, defendant sold the cocaine outside in the parking lot of Reed's Pharmacy. Naturally, there is more danger of children being involved in this situation. It should not matter that this distribution occurred at night since school children attend school functions and congregate at schools for other reasons, after school hours. Therefore, we find the application of La.R.S. 40:981.3 is not unconstitutionally overbroad. Defendant was not convicted by virtue of an improper or unconstitutional application of the statute, and defendant's motion to quash was properly denied. These assignments of error lack merit.

ASSIGNMENT OF ERROR NUMBER THREE
Defendant alleges the state did not prove the existence and location of the "school zone" beyond a reasonable doubt.
At trial, Ronald Landreneau, an expert in the fields of civil engineering and registered land surveying, testified that by meeting with the principal of Mamou High School and reviewing maps of the city of Mamou, he confirmed the boundary of the high school grounds. Landreneau measured the distance in a straight line from the furtherest point of the side parking lot of Reed's Pharmacy (the parking lot where the transaction took place) to the premises which form Mamou High School, which was three hundred sixty-seven (367) feet. Landreneau also measured the distance between the two points in a walking path, along the street, which was four hundred eighty-seven (487) feet. The distance from the furtherest point in the parking lot to the principal's office at Mamou High School in a straight line was six hundred fifty-one (651) feet. Landreneau's testimony concluded that "[n]o matter how you draw it, whether you draw a straight line or whether you walk along the streets, the furthest (sic) part of that parking lot is within a thousand feet of the school property."
On cross-examination, Landreneau stated he determined the actual boundaries of the school grounds by contacting the principal of the high school and by utilizing the official map of Mamou, which confirmed the principal's designation of the property. Landreneau testified he did not look at the documents filed in the courthouse which would show plots and titles because he did not have enough time. He stated if he were performing an actual survey of the property, he would have looked at recorded sales and conveyances. However, he stated that he was not performing a boundary survey; he was taking physical measurements to determine the distance from the property of the high school to the pharmacy parking lot.
After Landreneau's testimony, defense counsel moved for a "motion to dismiss and/or motion to quash and/or a motion for a directed verdict" on the ground the state had not proven beyond a reasonable doubt the actual boundary "up to legal standards" because Landreneau did not review the official court documents. The state argued, and the judge agreed, that whether or not the state had proven beyond a reasonable doubt the transactions occurred within one thousand feet of the school property is a question for the jury.
We find the state and the trial judge were correct in stating whether the state had proven this beyond a reasonable doubt was a question for the jury. The duty of the jury, in considering the evidence and in *32 applying that evidence to the law as given by the court, is to give the defendant the benefit of every reasonable doubt arising out of the evidence or out of the lack of evidence in the case. If not convinced of the defendant's guilt beyond a reasonable doubt, the jury's duty is to find defendant not guilty. La.C.Cr.P. art. 804. As stated in the jury charges, the jury is the exclusive judge of the facts. The jury finds from the evidence what facts have been proven and what facts have not been proven. The jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony. Landreneau's testimony as to the distance between the parking lot of Reed's Pharmacy and the boundary of the high school was evidence that the jury was free to accept or reject. It was the jury's duty to determine whether the distance had been proven beyond a reasonable doubt. Landreneau, accepted at trial as an expert in the fields of civil engineering and land surveying, stated he did not need to review the documents from the courthouse to determine the boundary of the high school because he was not called upon to perform a survey. He met with the high school principal and reviewed the official map of Mamou in determining the boundary, which the jury obviously believed was sufficient to prove the distance beyond a reasonable doubt. Defendant's motions were properly denied. This assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER FOUR
Defendant claims the chain of custody of the alleged crack cocaine was not adequately proven beyond a reasonable doubt.
At trial, Officer Comeaux, who was working undercover on the night of November 1, 1990, testified he purchased the crack cocaine from defendant and turned it over to Detective Fontenot. He identified the evidence at trial as what appeared to be the rock of cocaine he purchased from defendant. Detective Fontenot then identified the evidence as what he had received from Officer Comeaux. After receiving the evidence, he sealed it in an evidence envelope and attached a label with the date, the name of the person who purchased it, and the name from whom it was purchased. It was locked in the evidence locker until it could be submitted to the crime lab. The sheriff has the only key to the locker. Evidence from different crimes is placed in the locker, but only after it has been properly packaged and labeled. The envelope was brought to the lab on November 19, 1990, which means it sat in the locker for eighteen (18) days. Fontenot and one other man, Dupuis, were the only two investigators for the Sheriff's Department; therefore, both he and Dupuis would go into the locker on occasion. Fontenot stated he submitted the evidence to Gwen Meyers at the crime lab; "she usually accepts the evidencethat's her job." Miss Meyers' signature appears on the submission form.
David Epstein, forensic chemist at the crime lab, was shown the evidence at trial and stated it was the same envelope and rock Detective Fontenot presented to the crime lab for analysis. His records showed Fontenot submitted an envelope containing one rock believed to be cocaine for analysis on November 19, 1990. Each piece of evidence the lab receives is assigned a unique identification number placed on the envelope by Miss Meyers, the secretary, that reads "ACL", the year, and a four digit number. The case number assigned was the same number present on the item handed to him at trial. Epstein also noticed that on the item were his initials and the date November 20, 1990, which was the date he resealed the evidence after analysis. After the analysis, the lab retained possession of the envelope in the vault until Epstein brought it with him to trial.
Epstein also testified that after the envelope was signed over to Miss Meyers, she locked it in the evidence vault, where it stayed until the next day, when he retrieved it. Five people have access to the vault: four analysts and Miss Meyers, who are allowed a pass key during the day to store the evidence when it is submitted. Epstein stated that the envelope was sealed when it came to the lab and, after analysis, *33 he placed the evidence back in the envelope and resealed it. The tests were positive for cocaine. He further stated that he opens only one item of evidence at a time so as not to mix up evidence in another case.
At trial, defendant moved for a "motion to dismiss and/or motion to quash and/or motion for a directed verdict" on the ground the state failed to prove the chain of custody of the rock of cocaine because Miss Meyers did not testify as to what she did with it. The court denied the motion, agreeing with the state that many cases state the person to whom the evidence was submitted at the crime lab does not have to testify. Defendant also added, in his brief, the argument that since the evidence was placed temporarily in an evidence room where evidence from other crimes are placed and to which at least one other person had a key, it is possible the cocaine identified may not have been what was originally purchased from defendant.
Admission of physical evidence requires that a foundation be laid either by positive identification by a witness or through establishment of a chain of custody. State v. Guillory, 438 So.2d 1256 (La. App. 3d Cir.1983). A continuous chain of custody need not be established if the evidence as a whole establishes that it is more probable than not that the object introduced is the same as the object originally seized and any defects in the chain of custody go to the weight of the evidence and not to its admissibility. State v. Guillory, supra; State v. Wilson, 517 So.2d 865 (La. App. 3d Cir.1987).
In the instant case, the rock of cocaine was identified by Officer Comeaux, Detective Fontenot, and David Epstein. The testimony of Officer Comeaux who purchased the drug, Detective Fontenot who transported it to the crime lab, and Epstein, the chemist who analyzed and identified the cocaine, establishes it is more probable than not the cocaine which was introduced into evidence was the same cocaine that was purchased by Officer Comeaux from the defendant. Miss Meyers was the only person in the chain of custody not to testify at trial. Although five people have keys to the evidence vault at the crime lab, Epstein testified that when he retrieved the evidence to test it, the envelope was sealed and he resealed the envelope after analysis. Further, Epstein stated he only tested one piece of evidence at a time so he would not mix up evidence from other cases. Detective Fontenot also testified the sheriff has the only key to the locker room where evidence is placed before it is submitted to the crime lab for analysis. Because Fontenot and one other man are investigators, they necessarily enter the locker on occasion. However, evidence is only placed in the locker after it has been packaged and labeled. The record leaves no doubt the substance seized from defendant was the same substance tested and identified as cocaine and thus, the state has proven the chain of custody. See, State v. Comeaux, 505 So.2d 220 (La.App. 3d Cir.1987); State v. Franks, 483 So.2d 224 (La.App. 3d Cir. 1986), writ denied, 488 So.2d 196 (La.1986); State v. Carter, 521 So.2d 553 (La.App. 1st Cir.1988).

ASSIGNMENT OF ERROR NUMBER FIVE
Defendant claims the verdict delivered by the jury was improper as to form and therefore void. Defendant also claims a mistrial should have been granted based on this error.
The record reflects that during the jury charge, the trial judge listed nine (9) possible verdicts that could be reached. None of the nine verdicts simply read "Guilty". The jury returned from its deliberations with a verdict of "Guilty". The judge sent the jury back to deliberations, stating "it is not clear to the Court whether you found the man guilty as charged or on one of the alternate pleas." Defense counsel then moved for a mistrial "based on the way that the verdict was designated". The motion was denied. The jury then returned with a verdict of "guilty of verdict number one," which was guilty of distribution of cocaine within one thousand feet from property used for school purposes by the Mamou High School. The jury was polled individually; all jurors stated "guilty" with *34 one stating "guilty of possession." The record also reflects that on the original verdict form, verdict number one had been circled. The judge later stated he sent the jury back to finish filling out the verdict form to make the record "crystal clear".
La.C.Cr.P. art. 810 states there shall be no formal requirement as to the language of the verdict except that it shall clearly convey the intention of the jury. La. C.Cr.P. art. 813 provides that if the court finds the verdict to be incorrect in form or not responsive to the indictment, it shall refuse to receive it, and shall remand the jury with the necessary oral instructions.
The trial judge did not err in refusing to grant a mistrial. The instructions by the trial judge did not list the single word "guilty" as a possible verdict. Although the jury's verdict of "guilty" was coupled with verdict number one being circled, the judge did not believe that the record was clear as to the jury's verdict. Under La. C.Cr.P. art. 813, it was proper for the judge to refuse to receive the verdict and remand the jury. The jury returned with a verdict matching that which was circled on the original verdict form. Moreover, the jury was polled as to each of their verdicts. The original verdict could be construed as nonresponsive, which was corrected by the judge's remanding the jury, which returned with a proper verdict. The record provides no basis for a mistrial. This assignment of error lacks merit.

ASSIGNMENTS OF ERROR NUMBERS SIX AND SEVEN
Defendant alleges the trial court erred in not granting his motion for a mistrial based on the improper verdict and that the sentence imposed was excessive for a first offender.
These assignments of error were neither briefed nor argued by defendant and are therefore considered abandoned and will not be addressed. State v. Dewey, 408 So.2d 1255 (La.1982); Uniform RulesCourts of Appeal 2-12.4

ASSIGNMENTS OF ERROR NUMBERS EIGHT AND NINE
Defendant claims the judge made a long, emotional speech immediately before the imposition of sentence, which created an unfair and prejudicial atmosphere, leading to an excessive sentence.
The record reflects the trial judge did engage in a lengthy, somewhat emotional speech prior to the imposition of defendant's sentence. However, defendant was not prejudiced in the imposition of his sentence. La.R.S. 40:981.3(E) provides as follows:
E. (1) On a first conviction, whoever violates a provision of this Section shall be punished by the imposition of the maximum fine and not less than one-half nor more than the maximum term of imprisonment authorized by the applicable provisions of R.S. 40:966 through R.S. 40:970, with the minimum mandatory term of imprisonment being served without benefit of parole, probation, or suspension of sentence, provided in no case shall the term of imprisonment be less than the minimum term provided in R.S. 40:966 through R.S. 40:970.
La.R.S. 40:967(B) provides for a term of imprisonment at hard labor for not less than five years nor more than thirty years and a possible fine of not more than fifteen thousand dollars. Based on both of these statutes, under which defendant was convicted, the trial court was mandated to impose the maximum fine of fifteen thousand dollars, and not less than one-half of the thirty year maximum sentence, fifteen years, which must be served without benefit of probation, parole, or suspension of sentence. This minimum mandatory sentence was the exact sentence which was imposed upon defendant. Therefore, the alleged "emotional" speech given by the trial judge could not have created a prejudicial atmosphere leading to an excessive sentence. There is no basis for defendant's claim since he was given the minimum sentence possible. These assignments of error lack merit.
*35 For the foregoing reasons, defendant's conviction and sentence is affirmed.
AFFIRMED.
NOTES
[*] Judge Culpepper, retired, participated in this decision as Judge Pro Tempore.