670 So.2d 361 (1996)
STATE In the Interest of A.H.
No. CR95-1094.
Court of Appeal of Louisiana, Third Circuit.
January 31, 1996.
*362 William E. Tilley, Ted Broyles I, Asst. Dist. Atty., Leesville, for State of Louisiana.
Scott Westerchil, Leesville, for Achim D. Hull.
Before THIBODEAUX, SAUNDERS and SULLIVAN, JJ.
SAUNDERS, Judge.
On January 25, 1995, A.H.[1], a juvenile, was charged with one count of distribution of cocaine, a violation of La.R.S. 40:967. On February 1, 1995, A.H. denied the petition for delinquency, and was adjudicated a delinquent as charged on March 29, 1995. A dispositional hearing was held on April 5, 1995 and the trial court ordered the juvenile be committed to the custody of the Department of Public Safety and Corrections, Office of Youth Development, for a period not to exceed five years. The court recommended a secure custodial environment placement at Leesville Technical Institute. On April 12, 1995, the juvenile filed a motion to reconsider the sentence, which the trial judge denied. The juvenile now appeals his conviction and sentence alleging three assignments of error.

FACTS
On January 10, 1995, the juvenile, A.H., sold a quantity of crack cocaine to an undercover Leesville police officer. A videotape was made of the drug transaction. Officer Bobby Hickman identified the juvenile in the video as A.H. A.H. was arrested after the lab report came back from the Crime Lab.

ASSIGNMENTS OF ERROR
1. Whether or not the trial court erred in overruling defendant's objection to the *363 trial court acting as the prosecutor and trier of fact within the same proceeding.
2. Whether or not the trial judge erred in rendering a verdict of guilty, in light of the testimony and evidence at trial.
3. Whether or not the sentence imposed upon the juvenile was excessive.

ASSIGNMENT OF ERROR NO. 2
By his second assignment of error, the juvenile contends the evidence was insufficient to convict him.
When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accordance with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) in the light most favorable to the prosecution, could not reasonably conclude that all of the essential elements of the offense have been proved beyond a reasonable doubt. When the entirety of the evidence, including inadmissible evidence which was erroneously admitted, is insufficient to support the conviction, the accused must be discharged as to that crime, and any discussion by the court of the trial error issues as to that crime would be pure dicta since those issues are moot.
State v. Hearold, 603 So.2d 731, 734 (La. 1992).
Thus, even though the juvenile placed this assignment second, we will review it first. In a juvenile case, the state has the burden of proving, beyond a reasonable doubt, that the juvenile committed the delinquent act alleged in the petition. La.Ch. Code art. 883. The burden of proof is no less strenuous than the proof standard required in a criminal proceeding against an adult. State In Interest of Tatom, 463 So.2d 35 (La.App. 5 Cir.1985). The due process standards announced in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) apply in evaluating the sufficiency of evidence to support an adjudication of delinquency in a juvenile matter. State In Interest of T.L., 514 So.2d 217 (La.App. 5 Cir. 1987).
When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, rehearing denied, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983); State v. Duncan, 420 So.2d 1105 (La.1982); State v. Moody, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibilities of the witnesses, and therefore the appellate court should not second guess the credibility determinations of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. See State ex rel. Graffagnino, citing State v. Richardson, 425 So.2d 1228 (La.1983).
Additionally, appellate review in juvenile delinquency proceedings extends to both law and facts. La. Const.Art. V, § 10(B) (1974); State In Interest of Batiste, 367 So.2d 784 (La.1979); State In Interest of Wilkerson, 542 So.2d 577 (La.App. 1 Cir.1989). The court in Wilkerson stated:
In a juvenile case, when there is evidence before the trier of fact that, upon its reasonable evaluation of credibility, furnished a factual basis for its finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. (citations omitted) Reasonable evaluation of credibility and reasonable inferences of fact should not be disturbed upon review.
Id. at 581.
In order for the state to obtain a conviction in the instant case, it must have proven each element of the offense of distribution of cocaine. In this case, the juvenile mainly contests identity. Where the key issue is not whether the crime has been committed, *364 but whether the defendant was the person who committed it, the state is required to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Smith, 430 So.2d 31 (La.1983); State v. Long, 408 So.2d 1221 (La.1982). The juvenile further contests the chain of evidence relating to the evidence bag and the rock bought from the drug dealer.
The prosecution called Larry Fulks, a narcotics detective with the Vernon Parish Task Force. Fulks said he and Officer Mike Gore, undercover agent Jeff Jeter, and a confidential informant met at the end of Tower Street in Leesville, Louisiana. He placed a video camera in Jeter's vehicle. Jeter and the confidential informant proceeded to the Crossing Area and made a purchase on Lawrence Street from two suspects. They went further down the street and a young black male approached the vehicle. They purchased a rock of cocaine from him. Jeter and the informant departed and met with Fulks and Gore at Tower Street. Fulks issued Jeter a small plastic bag on which he placed the date of January 10, 1995, the time and Jeter's initials. Jeter knew the name of the subject from whom they had made the first purchase. The rock of crack was placed in the bag. For the second purchase, Fulks issued Jeter a second bag and Jeter put the date, time and his initials. He further put the rock of crack from the purchase in the bag. Fulks and Gore reviewed the videotape and neither could identify the subject from whom the second purchase had been made. A night or two later, Officer Billy Davis viewed the videotape and he identified the subject as A.H. The video was shown to Officer Bobby Hickman and Leesville Police Chief Buck Massey. Both men identified the subject in the video as A.H.
On cross-examination, Fulks explained that Jeter had made two purchases from two different subjects that night and had put each rock of crack in a separate pocket. Fulks handed Jeter a bag which Jeter marked and in which he placed the rock from the first buy. Jeter then produced the rock from the second purchase, Fulks handed him another bag, and Jeter put the rock in it. The four men then viewed the video and discussed the first buy. The confidential informant and Fulks both identified the subject in the first buy. Neither Jeter nor the confidential informant knew the subject in the second buy. Jeter gave a description of the subject being young-looking. Fulks said he could not identify the subject in the second buy. Fulks brought the evidence to the Task Force Office and locked it in a safe. Fulks said he did not think Jeter accompanied him back to the Task Force Office. The evidence was later removed and placed in the possession of Officer Bobby Hickman. Fulks said he never made a photographic lineup of the subject in the second buy because he could not get a picture of the juvenile.
Jeff Jeter, the undercover officer who purchased the crack, stated the first purchase he made was from A.H. Jeter said after that buy they met with Gore and Fulks, bagged the evidence and had a debriefing on the purchase. Jeter and the confidential informant then went back to make other buys. Jeter said they made three buys that night, and after each buy they would meet with Fulks and Gore and turn over the evidence. He said after they called it a night, they went back to the Task Force Office. He viewed the videotape there. Jeter was not asked to identify in the courtroom, the defendant, A.H., as the one from whom he purchased drugs.
On cross-examination, Jeter testified that on that night, he and the confidential informant met with Gore and Fulks at the Narcotics Task Force. Jeter's truck was searched and the was camera installed. Jeter said he never listened to the audio tape, but did hear the audio that was recorded by the videotape. Jeter said he was searched by Fulks and Gore at the Narcotics Task Force Office before any buys and then at a designated meeting place on Tower Street after each individual buy. Jeter said when they left the Task Force to make the first buy they went straight to the Crossing Area, not to the designated meeting area. He said he made three buys that night. Jeter said the first buy was not from A.H. He identified the subject from the first buy in a photographic lineup about a month after the purchase. He said he did not identify the *365 subject in the first buy the night of the purchase, but that the confidential informant and either Gore or Fulks was able to identify him. Jeter said after he made the first buy, he was heading back to the pre-arranged location off of Texas Highway when he was hailed down and he made a second buy. He said after that second buy they went back to the pre-arranged meeting location.
Jeter said when he made the first buy, he took the cocaine from the subject and put it in his left breast pocket of his jacket. On the second buy, he placed the rock in the waist pocket of the jacket. He did not know the identity of the subject. Jeter and the confidential informant proceeded to the meeting area and met with Gore and Fulks who were there. Jeter testified he produced the rock from the first buy out of his left breast pocket and Fulks handed him a bag in which he placed the rock and labeled and initialed it. Jeter handed the bag to Fulks who placed it in the evidence envelope. Jeter then went through the same procedure with the rock from the second buy. He repeated that he first saw the videotape at the Narcotics Task Force after they had finished all the buys that evening. He said Fulks probably viewed the videotape right after the buys were made. Jeter said he saw a photo lineup of the first buy but he did not recall seeing a photographic lineup from the second buy. He said he believed Michael Edwards was the subject the confidential informant identified from the first buy.
On redirect examination, Jeter said the subject involved in the first buy was different from the subject in the second buy. He said after he made the first buy, he drove about sixty feet down the road, around the corner, and was then hailed down for the second buy. Jeter said the subject in the second buy was not Michael Edwards.
Police Officer Michael Gore said that on the evening of January 10, 1995, he met with Fulks, Jeter and a confidential informant at the Task Force Office. After Jeter's vehicle was wired, Jeter and the informant proceeded to the Crossing Area of Leesville, and a drug buy took place. Jeter and the informant then returned to the designated meeting place. Gore said Jeter placed the evidence in a plastic bag and gave it to Fulks. Gore said it was the last transaction of the night. They viewed the video at the end of Tower Street. He said in the video, a black individual came to the vehicle and Jeter asked for a $40.00 rock and one was handed to Jeter. He said he did not recognize the individual in the video. After reviewing the videotape they returned to the Narcotics Task Force. Gore said he believed two purchases were made that night. The meeting at Tower Street occurred after the two transactions. Gore said they viewed the videotape at Tower Street and he, Fulks and the confidential informant identified the suspect in the first transaction, but no identification was made of the suspect in the second transaction by any of the four men. Gore said all four of them returned to the Narcotics Task Force. Gore said he later showed the tape to Chief Massey who recognized the suspect in the second transaction as A.H.
Deputy Billy Davis of the Vernon Parish Sheriff's Department said that some time around January 10, 1995, Fulks asked him to view a videotape to see if he could identify the subject that he had on video. Davis said he looked at the video and he recognized the subject. He said he did not know his name at the time. Davis said he recognized him because he lived behind Davis' house and played basketball with Davis' son. He stated the juvenile was the same person in the video.
On cross-examination, Davis said he did not recognize the juvenile in the first viewing of the tape. He said it was moving very fast and he had to stop and slow it down to identify the subject. He said he stopped the tape and blew it up and he then recognized the juvenile. Davis further said he did not make a mistake in identifying the juvenile because he sees him almost every day.
Leesville Police Officer Bobby Hickman, assigned to juvenile investigations, handled the investigation of A.H. He viewed the videotape at the Task Force Office and identified the subject as A.H. Fulks then turned the case over to Hickman and gave him the evidence, the rock of crack. Hickman took it to the Crime Lab. The certified report from the Crime Lab was entered into evidence. *366 Hickman later picked up the rock for evidence in the trial and secured it in the evidence locker. He explained the reason they do not do a photographic lineup of a juvenile suspect is because they do not have photographs of juveniles, and it would not be fair to show his picture with adult pictures.
On cross-examination, Hickman said the suspect had a deep voice in the video, and that he would not say A.H. had a deep voice. He further explained that he works with audio recordings every day and they do not reflect the exact sound of a person's voice.
Officer Fulks was recalled by the defense in its case-in-chief. He stated that he had prepared the report of the transaction the next day. The report stated that a buy was for a $40.00 piece of rock cocaine. He said he mistakenly marked on the evidence bag that the rock bought was for $20.00. He said it might have been the first buy that was $20.00, but he remembered the rock from the second buy was $40.00. Fulks could not remember from which pockets Jeter took the first and second rocks. He reiterated that normally they try to get one buy on each tape and retrieve the evidence after each buy. He said on the night in question, the defendant flagged down Jeter's vehicle soon after the first purchase, so they made two buys on the same tape.
Defense counsel introduced the videotape which was played. Fulks stated he believed the deep voice on the tape was that of the confidential informant.
The juvenile, A.H., denied he was the individual in the videotape selling cocaine to undercover officers. He said the individual on the tape was Michael Edwards. The defense called Michael Edwards who stated he was arrested and charged with distributing cocaine on January 10, 1995.
This court has reviewed the videotape of the two drug transactions. The suspect in the second transaction, the one said to be A.H., was clearly filmed. The video of the first transaction showed two people trying to sell with the one on the left, Michael Edwards, actually selling a rock to the officers. Yet in this first transaction, the seller on the right, Banana Red, was in the foreground, and Edwards was in the background.[2] Because of this, the video hardly captured Edward's face. Thus, it is not clear, as the juvenile contends, that the individual in both sales was Michael Edwards. Officer Jeter testified that the individuals in the two transactions were different. The juvenile has presented no evidence that the suspects in the two transactions were the same. Jeter referred to the juvenile as the same person from whom he purchased the drugs. In State v. Burton, 615 So.2d 1042 (La.App. 1 Cir.), writ denied, 620 So.2d 874 (La.1993), the court explained:
The identity of a defendant as the perpetrator of a crime is one of the elements of the crime that must be proved by the State beyond a reasonable doubt. See State v. Johnson, 461 So.2d 673, 674 (La.App. 1st Cir.1984). However, identification can be inferred from all the facts and circumstances that are in evidence. See United States v. Weed, 689 F.2d 752, 754 (7th Cir.1982) (court finds sufficient evidence of identification although none of the witnesses were asked to identify the accused in court; attorneys interspersed references to defendant's name with references to "the defendant"; none of the witnesses noted that defendant was not the same person they had detained). See also United States v. Morrow, 925 F.2d 779, 781 (4th Cir.1991) (court implied the evidence was sufficient to permit the inference that the defendant on trial was the person who had committed the crime without considering the witnesses' response to the court's request that they point to the defendant in court; the arresting officer in this narcotics offense knew defendant to be a drug user and one officer identified defendant by name in answer to a question on cross-examination); United States v. Doherty, 867 F.2d 47, 67 (1st Cir.), cert. denied, 492 U.S. 918, 109 S.Ct. 3243, 106 L.Ed.2d 590 (1989) (court noted that, although the witnesses were not asked to make an in-court *367 identification, the witnesses did not deny defendant's identity and defendant had the same name and nickname as the person indicted and about whom the witnesses spoke).
Burton, 615 So.2d at 1046.
Officers Davis and Hickman both recognized the juvenile as the individual in the video. While there are some inconsistencies in the officers' versions of the order of transactions that took place, sufficient evidence existed to identify the juvenile as the same individual in the videotape.
Further the chain of evidence was sufficient for a rational trier of fact to have found this element of the crime proven beyond a reasonable doubt. In State v. Shillow, 602 So.2d 28 (La.App. 3 Cir.1992), the court stated:
Admission of physical evidence requires that a foundation be laid either by positive identification by a witness or through establishment of a chain of custody. State v. Guillory, 438 So.2d 1256 (La.App. 3d Cir. 1983). A continuous chain of custody need not be established if the evidence as a whole establishes that it is more probable than not that the object introduced is the same as the object originally seized and any defects in the chain of custody go to the weight of the evidence and not to its admissibility. State v. Guillory, supra; State v. Wilson, 517 So.2d 865 (La.App. 3d Cir.1987).
Shillow, 602 So.2d at 33.
The testimony of the law enforcement officials clearly established a proper foundation for the introduction of the cocaine. Officers Jeter and Fulks were certain that their method of securing and labeling the cocaine was sufficient to ensure that the cocaine presented at trial was the same as that purchased from the juvenile. Fulks admitted he mistakenly labeled the rock purchased from A.H. as a $20.00 rock instead of a $40.00 rock. We note that in the video one of the officers commented that the rock purchased from A.H. seemed small for a $40.00 rock. The juvenile's argument to the contrary affects the weight of the evidence, not its admissibility. Furthermore, Hickman explained he had securely transported the rock to and from the Crime Lab and had secured it in the evidence locker before trial. The certified report from the Crime Lab was introduced into evidence. We find that a sufficient foundation was laid and the trial judge's decision that the chain of custody was properly established should not be disturbed. This assignment lacks merit.

ASSIGNMENT OF ERROR NO. 1
By his first assignment of error, the juvenile contends the juvenile judge erred in overruling his objection to the juvenile judge acting as the prosecutor and trier of fact within the same proceeding. The State's brief is in concurrence with the juvenile's in this matter. The petition for delinquency was filed by Leesville Police Officer Bobby Hickman. It is evident from the record of the proceedings that the juvenile judge performed the direct examination of the petitioner's witnesses and the cross-examination of the juvenile's witnesses. The District Attorney's Office was never apprised of the charges or the proceedings. The juvenile judge stated that this was the established practice in juvenile delinquency proceedings in City Court in Leesville. When the juvenile judge began questioning the first witness, the juvenile's attorney objected to the proceeding, stating it was improper and a conflict of interest for the juvenile judge to prosecute the case and decide it. The judge overruled the objection saying he was not prosecuting the case but was simply eliciting information from the parties.[3]
La.Ch.Code art. 104 states that "where procedures are not provided in this Code, or otherwise by law, the court shall proceed in accordance with the Code of Criminal Procedure in a delinquency proceeding and in a criminal trial of an adult." La.Ch.Code art. 808 states: "All rights guaranteed to criminal defendants by the Constitution of the United States or the Constitution *368 of Louisiana, except the right to jury trial, shall be applicable in juvenile court proceedings brought under this Title." The Children's Code does not provide that a juvenile judge can both prosecute and decide a case. La.Ch.Code art. 842 provides: "A delinquency proceeding shall be commenced by a petition. The district attorney may file a petition without leave of court. Any person authorized by the court may file a petition if there are reasonable grounds to believe that the child is a delinquent child." La. Const. art. V, Sec. 26(B) states that a district attorney shall have charge of every criminal prosecution by the state in his district. La.Code Crim.P. art. 61 provides that "the district attorney has entire charge and control of every criminal prosecution instituted or pending in his district, and determines whom, when, and how he shall prosecute." La.R.S. 16:3 states that the district attorneys throughout the state shall represent the state in all criminal prosecutions before city courts constituted by law. In State v. Warner, 153 La. 557, 96 So. 120 (1923), the supreme court explained that district attorneys are not required to initiate criminal prosecutions before the city courts, but shall represent the state in all criminal prosecutions before those courts. Thus, while La.Ch.Code art. 842 provides that a criminal prosecution may be initiated by an individual other than the district attorney, it appears the delinquency adjudication itself requires the participation of the district attorney.
In State v. Nunez, 147 La. 394, 85 So. 52 (1920), the court stated that no one shall act as prosecutor in a case in which he is to sit as judge. Id. at 56. Furthermore, juveniles have been guaranteed due process rights to a fair trial. In State In Interest of Dino, 359 So.2d 586 (La.1978), cert. denied, 439 U.S. 1047, 99 S.Ct. 722, 58 L.Ed.2d 706 (1978), the court found that a juvenile adjudicated a delinquent based upon acts that would be a crime if engaged in by an adult, was entitled to be informed of and exercise his privilege against self-incrimination, his right to counsel, and his right to confront and cross-examine witnesses. Id. at 589. See also In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). The Dino court further found that fundamental fairness and due process require a juvenile be given a public trial. Id. at 597.[4] La. Const. art. I, II and the above cases require a juvenile delinquency adjudication be an adversary process. Therefore, we find that a trial judge should not perform the prosecutorial duties of the State in a juvenile delinquency adjudication. For these reasons, this assignment of error merits that this case be remanded.

ASSIGNMENT OF ERROR NO. 3
This assignment of error, a review of the disposition, is rendered moot in light of our remanding this case to the lower court in accordance with Assignment of Error One.

ERRORS PATENT
Although there is no statutory provision which affirmatively grants courts the authority to review juvenile delinquency proceedings for patent error, such a review has been conducted in the past. See State in the Interest of Handy, 559 So.2d 795 (La. App. 1 Cir.1990). State in Interest of B.J., 617 So.2d 238 (La.App. 5 Cir.1993). See also La.Ch.Code art. 104 which states:
Where procedures are not provided in this Code, or otherwise by law, the court shall proceed in accordance with:
1) The Code of Criminal Procedure in a delinquency proceeding and in a criminal trial of an adult.
2) The Code of Civil Procedure in all other matters.
La.Code Crim.P. art. 920 provides the scope of review on appeal, as follows:
The following matters and no others shall be considered on appeal:
(1) An error designated in the assignment of errors; and
(2) An error that is discoverable by a mere inspection of the pleadings and proceedings without inspection of the evidence.
In accordance with this article, all appeals are reviewed for errors patent on the face of the record. We note two errors patent. La. Code Crim.P. art. 930.8 provides that at the time of sentencing the trial court shall inform *369 the defendant of the prescriptive period for post-conviction relief. Although a similar Children's Code provision does not exist, La. Ch.Code art. 104 provides that when the Children's Code is silent, the Louisiana Code of Criminal Procedure applies. Thus, the juvenile should be advised of the three year limitation for filing for post-conviction relief. The record shows the juvenile judge did not so inform the juvenile. This defect has no bearing on whether the disposition is excessive and thus is not grounds to reverse the disposition or remand the case for a new disposition. La.Code Crim.P. art. 921. The three year prescriptive period does not begin to run until the judgment is final under La.Code Crim.P. art. 914 or 922, so prescription is not yet running. The juvenile court is directed, in the event of a new adjudication of delinquency, to advise the juvenile of the prescriptive period contained in La.Code Crim.P. art. 930.8.
La.Ch.Code art. 898 states that the court shall give a child credit for time spent in secure detention prior to the imposition of disposition. See State in Interest of J.G., 94-194 (La.App. 5 Cir. 7/26/94); 641 So.2d 633. The record indicates the juvenile judge did not do so. However, because of our remand in accordance with Assignment of Error One, this argument is rendered moot. In the event the juvenile is again adjudicated a delinquent, the juvenile court is ordered to comply with La.Ch.Code art. 898.

CONCLUSION
Numerous state laws specify the district attorney is the sole representative of the State in criminal prosecutions. Furthermore, fundamental fairness and due process require that a juvenile judge not be allowed to represent the State in juvenile delinquency adjudications. The juvenile's adjudication as a delinquent child is reversed, his disposition is set aside, and this case is remanded for a new trial in accordance with this opinion. Because of this remand, Assignment of Error Three is rendered moot.
REVERSED AND REMANDED.
NOTES
[1] The juvenile's initials are used in the interests of privacy.
[2] In the videotape, Jeter and the confidential informant discussed that Banana Red was in the foreground and Edwards was on the left. The officers further discussed in the videotape that Edwards was the one from whom they purchased crack in the first buy.
[3] The city courts have concurrent juvenile jurisdiction with the district courts. La.Ch.Code art. 302(4). Therefore, it appears the prosecution of the juvenile for a felony offense in city court is permissible.
[4] The Dino court found that juveniles in delinquency proceedings are not entitled to the Sixth Amendment right to a trial by jury. Dino, 359 So.2d at 598.