| iPETERS, Judge.
Defendant, Donna Boddie, was charged by bill of information with illegal possession of stolen things having a value of over $500.00, in violation of La.R.S. 14:69 (count one); conspiracy to commit theft of property having a value of greater than $100.00 but less than $500.00, in violation of La.R.S. 14:26 and La.R.S. 14:67 (count two); and theft of property having a value of over $100.00 but less than $500.00, in violation of La.R.S. 14:67 (count three). After trial by jury, the defendant was convicted on all three counts. The trial court then sentenced her to serve forty-eight months at hard labor on count one, twelve months at hard labor on count two, and twenty-four months at hard labor on count three, with the sentences to run concurrently with each other, subject to credit for time served. The defendant appeals, asserting three assignments of error, one of which has been abandoned.
DISCUSSION OF THE RECORD
There is little dispute as to the facts giving rise to these criminal charges. On ^December 8, 1993, Martha Ann Holmes, Dion Winfield, Susie Manuel, Diane Lynch, and the defendant drove to DeRidder, Louisiana, from the Sabine Parish area for the specific purpose of shoplifting. While the defendant and two of the other women were in the Payless Shoe Source in DeRidder, the store manager became suspicious and called the police. A short time later, all five of the females were apprehended and placed under arrest. At trial, the principal evidence used to convict the defendant was the testimony of codefendants, the testimony of the Payless Store manager, and the defendant’s voluntary statement.

ASSIGNMENT OF ERROR NO. 1:

By defendant’s first assignment of error, she argues that the trial court erred by allowing the state to peremptorily challenge two black jurors on the venire: Lee Holmes and Curtis L. Gosey. The defendant asserts that these two individuals were the only two potential black jurors on the venire “that were called into the box to serve.”[1]
At the time of the voir dire proceedings, Holmes was employed by the Beauregard Parish Police Jury as a custodian at the courthouse, where he had worked for thirteen years. Holmes did not think his interaction with the courthouse personnel would be a problem for him. He did recognize some of the potential witnesses but indicated he had no personal knowledge or relationship with any of them which would affect his ability to serve as a juror.
Curtis L. Gosey was a minister. He testified that he knew the defense attorney as well as his father and that he and the defense attorney’s father had worked together in the Ministerial Alliance. According to Gosey, nothing in these relationships or friendships would cause him difficulty in sitting on this jury. Additionally, Gosey ^testified that his religious beliefs would not prevent him from judging according to the evidence he heard *1248 or applying the law as instructed by the trial judge. However, when asked if he would still accept and apply the law even if it were something that he did not like, he testified: “I don’t know, it’s kind of technical.” He indicated later that he would abide by the law. Also, it appears from Gosey’s testimony that he might have difficulty hearing all of the proceedings.
In State v. Green, 94-0887 (La.5/22/95); 655 So.2d 272, 287 (quoting Hernandez v. New York, 500 U.S. 352, 358-59, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991)), the Louisiana Supreme Court explained the test for a Batson challenge as follows:
In Batson the Supreme Court adopted a three-step analysis to determine whether the constitutional rights of prospective jurors have been infringed by impermissible discriminatory practices:
First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race. Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race neutral explanation for striking the jurors in question. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination.
(Footnotes omitted).
The sole focus of the Batson inquiry is on the prosecutor’s intent at the time he exercised his peremptory strikes. Green, 94-0887 (La.5/22/95); 655 So.2d 272.
In making a prima facie showing of discriminatory intent, the defendant may offer any relevant facts, including a pattern of strikes by the prosecutor against members of the suspect class, statements or actions of the prosecutor which support an inference that the exercise of peremptory strikes was motivated by impermissible considerations, the composition of the venire and the jury finally empaneled, and any other disparate impact upon the suspect class. Id. When the prosecutor peremptorily challenged Holmes, the defendant made a Batson objection for the record. The trial Rcourt stated that it did not believe that one challenge necessarily created a pattern indicating a discriminatory challenge. We agree. Since the strike against Holmes was the first strike of an African American, no pattern was established at that point. Additionally, the record does not disclose any statements or actions by the prosecutor which support an inference of an impermissible consideration for the strike at that time.
After the prosecution peremptorily challenged Gosey and the defendant again raised the Batson objection, the trial court did not expressly rule on whether the defendant met her burden of proving a prima facie case of discrimination but directed the prosecutor to state for the record the basis for challenging Holmes and Gosey. A trial court’s demand that a prosecutor justify the use of peremptory strikes is tantamount to a finding that the defendant has produced enough evidence to support an inference of discrimination. Id. In any event, once the prosecutor offers a race-neutral explanation for the peremptory challenges and the trial court rules on the question of intentional discrimination, the preliminary issue of whether the defendant has made a prima facie showing of discrimination becomes moot. Id.
Thus, the next step in the Batson procedure involves the determination of whether the prosecutor articulated race-neutral reasons for the challenges. Green, 655 So.2d 272. In Green, the supreme court stated:
Essentially, the burden on the prosecutor at this stage is to articulate reasons unrelated to impermissible classifications such as race for striking certain prospective jurors. Alternative classifications articulated by the prosecutor to justify his use of peremptory strikes cannot, however, be practically synonymous with the suspect classification allegedly being discriminated against.... It must be remembered that in this, the second stage of the Batson analysis, “the issue is the facial validity of the prosecutor’s explanation; ... [u]nless discriminatory intent is inherent in the prosecutor’s explanation, the reason offered will be deemed race neutral.” Her- *1249 na/ndez, supra, 500 U.S. at 363[sie], 111 S.Ct. at 1866.
Id. at 289 (citation omitted).
Isln challenging Holmes, the prosecutor stated in part:
He indicated that he knows some of the witnesses.... I am just stating with his knowledge of witnesses, it’s a risk that I don’t like taking one way or the other, whether he had some conflict with those witnesses or didn’t have conflict with those witnesses. And if he’s got a personal grudge with one of my witnesses, I don’t want him judging my case.... The other reasons are that we have law enforcement information that indicates that Mr. Holmes either is or has been a drug user, and possibly cocaine and or marijuana. And he has been in drug rehabilitation at least once, we think twice in the not-too-distant past.... I they [sic] that throws him out of the mainstream view of things as we would prefer to have our jurors view evidence in the law. We don’t want someone who is a drug'user or believed to be a drug user and having gone through drug rehab sitting on a jury. I think this is certainly race neutral. Again, I could care less if Lee is white or black. I personally rather like Lee because I see him frequently here in the courthouse. I have no idea what he thinks of me. I am not too worried about that. I mean, he knows everybody, he knows [the defense attorney]. I don’t know what that relationship involves. All of those things go into the reasons why we exercise the peremptory.
The prosecutor stated the following concerning the basis for challenging Gosey:
For Reverend Gosey, we have information indicating that Reverend Gosey has filed for bankruptcy, personal bankruptcy. We also have, or I have a problem with the fact that he’s a Baptist minister of many years. He’s been a friend, I take it, of [the defense attorney’s] father. I know [the defense attorney’s] father was a long-time, well-respected Baptist minister here in town. And probably oftentimes ministers are sympathetic and forgiving of folks when they do wrong. I’ve got to think that his close knowledge of [the defense attorney’s] father for many years and knowing [the defense attorney] for several years could well have an impact on how he would judge this case.
He also indicated he’s somewhat hard of hearing. He even seemed to me to be saying that he may not like some of the law, and he may not be able to apply the law. Now, I realize I may be putting a twist on that.
As explained in Green, these reasons do not contain the “cultural, geographic, or linguistic classifications which, due to the ease with which such classifications may serve as a proxy for an impermissible classification, invite particularly exacting scrutiny.” Id. Therefore, we find the prosecutor’s reasons for challenging Holmes and Gosey are facially race-neutral.
The next step in the Batson procedure is for the trial court to determine whether the defendant has established purposeful discrimination. Green, 655 So.2d 272. In | ¿reaching this determination, the trial court should examine all of the available evidence, which involves a comparison of the legal and factual arguments presented in the defendant’s prima facie offering as well as the race-neutral reasons articulated by the prosecutor. Id.
In this case, the prosecutor’s articulated concern that Holmes knew some of the witnesses is substantiated by the record. Additionally, the prosecutor articulated his concern that Holmes had been a drug user. While the assertion of drug use is arguably not supported by the record, we find that the trial court did not err in determining that the defendant failed to establish purposeful discrimination in striking Holmes since Holmes recognized some of the witnesses.
The reasons given by the prosecutor for striking Gosey were that Gosey had filed for personal bankruptcy, was a minister, had a friendship or relationship with the defense attorney and the defense attorney’s father, was somewhat hard of hearing, and might not like some of the law. The defendant pointed out that the bankruptcy was not a matter of record, but the trial court expressed personal knowledge of the bankrupt- *1250 ey. In any event, Gosey’s testimony regarding Ms willingness to apply a law that he did not like was somewhat equivocal. Additionally, the prosecutor was obviously concerned that Gosey’s religious views and relationsMp with the defense attorney’s father could consciously or unconsciously affect his deliberations. It is also less than clear whether Gosey would have been able to hear all of the proceedings. Even excluding the bankruptcy, any of the other reasons alone entitled the prosecutor to peremptorily strike Mr. Gosey. Thus, we find no error in the trial court’s failure to find that the defendant carried her burden of proving purposeful discrimination and reject tMs assignment of error.
I ^ASSIGNMENT OF ERROR NO. 2:
In her brief, the defendant expressly abandoned this assignment of error. Therefore, we will not consider it. See also Uniform Rules — Courts of Appeal 2-12.4.

ASSIGNMENT OF ERROR NO. 3:

By her third assignment of error, the defendant asserts that the verdict form is defective and that the trial court erred in accepting it. Although the defendant did not specify in what way the jury verdict form was improperly completed, it is apparent that she takes issue with the failure of the jury to write down the crimes of wMeh it found her guilty.
The jury was supplied with separate verdict forms for each count. Each verdict form provided the possible verdicts which might be applicable to that particular count. The instructions on each verdict form were that, after the jury arrived at a verdict, the foreman was to write the date and the verdict on the back of the verdict form and sign it as foreman. On each verdict form, the origmal charge was designated by the number “1.” The responsive verdicts were then numbered consecutively and described accordingly. For example, as to count one the verdicts were described as follows:
1. (Date) 1995.
Guilty of Illegal Possession of Stolen Things having a value of over $500.00.
(Signature of the Foreman) Foreman
2. _ (Date)_1995.
Guilty of Attempted Illegal Possession of Stolen Things having a value of over $500.00.
(Signature of the Foreman) Foreman
3. _(Date)_1995.
Guilty of Illegal Possession of Stolen Things having a value of over $100.00*, but less than $500.00.
(Signature of the Foreman) Foreman
Is4. _(Date)_1995.
Guilty of Attempted Illegal Possession of Stolen Things having a value of over $100.00, but less than $500.00.
(Signature of the Foreman) Foreman
*1251 5. _(Date)_1995.
Guflty of Illegal Possession of Stolen Things having a value of less than $100.00.
(Signature of the Foreman) Foreman
6. _(Date)_1995.
Guilty of Attempted Illegal Possession of Stolen Things having a value of less than $100.00.
(Signature of the Foreman) Foreman
7. _ (Date) 1995.
(Signature of the Foreman) Foreman
The other two verdict forms were similarly described. When the verdict forms were returned, each contained the following handwritten notation on the back:
May 9, 1995 1. Guilty Gael H. Young Foreman
La.Code Crim.P. art. 810 provides:
When a verdict has been agreed upon, the foreman shall write the verdict on the back of the list of responsive verdicts given to the jury and shall sign it. There shall be no formal requirement as to the language of the verdict except that it shall clearly convey the intention of the jury.
The foreman of the jury shall deliver the verdict to the judge in open court.
The foreman thus designated the verdict only by number and not by specifically naming the crime (i.e., “Guilty of Illegal Possession of Stolen Things having a value of over $500.00,” “Guilty of Conspiracy to Commit Theft of property having a value 19of $100.00 or more, but less than $500.00,” and “Guilty of Theft of property having a value of $100.00 or more, but less than $500.00”). However, we find that the verdict clearly conveyed the intention of the jury. Additionally, the following colloquy occurred:
BY THE COURT:
... The Court has reconvene [sic] for what it understands to be receiving a verdict from the jury in connection with this case. And the Court is advised that Mrs. Young is the foreperson of the jury, is that correct?
BY MRS. YOUNG:
Yes, sir.
BY THE COURT:
Mrs. Young, has the jury reached a verdict?
BY MRS. YOUNG:
Yes, we have.
BY THE COURT:
I will have you deliver the verdicts to the clerk, please.
BY THE COURT:
All right. I would ask that the clerk read the verdict.
BY THE CLERK:
Count number one, illegal possession of stolen things, May 9th, 1995, guilty, signed Gale H. Young, Foreman.
BY THE COURT:
Mr. Nichols, you need to read the number in front of that to make it clear that that is the verdict that was chosen. I am sorry. Do you understand what I am saying?
Count number one, verdict number one.
*1252 BY THE CLERK:
Count number one, illegal possession of stolen things, verdict number one, May 9th, 1995, guilty, signed, Gale H. Young, Foreman.
BY THE COURT:
The point is that the foreperson has written in front of the word “guilty,” “number one” indicating that it is verdict number one, is that correct?
BY MRS. YOUNG:
lioYes, sir.
BY THE CLERK:
May 9th, 1995, number one, guilty, Gale H. Young, Foreman. Ladies and gentlemen of the jury, is this your verdict to count number one?
BY THE JURY:
Yes, sir.
BY THE COURT:
Conspiracy to commit theft, count number two, May 9th, 1995, number one, guilty, signed Gale H. Young, Foreman. Ladies and gentlemen of the jury, is that your verdict to number one [sic]?
BY THE JURY:
Yes.
BY THE CLERK:
Count number three, theft, May 9th, 1995, number one guilty, signed Gale H. Young, Foreman. Ladies and gentlemen — Ladies of the jury, is this your verdict?
BY THE JURY:
Yes.
The jury was then polled.
In State v. Shillow, 602 So.2d 28 (La.App. 3 Cir.1992), the trial court listed nine possible verdicts that could be reached. None of these verdicts simply read “Guilty.” However, the jury rendered a verdict of “Guilty.” The trial court sent the jury back to deliberations, finding that it was not clear whether the jury found the defendant guilty as charged or guilty of one of the alternate pleas. Defense counsel moved for a mistrial, which motion was denied. The jury returned with a verdict of “ ‘guilty of verdict number one,’” which verdict was the crime with which defendant had been charged. The jury was polled, and all jurors, except one, stated, “guilty.” Additionally, on the original verdict form, verdict number one had been circled. The trial court stated that it sent the jury back to finish filling out the verdict form in order that the record would be “ ‘crystal clear.’ ”
| nThis court held that the trial court did not err in refusing to grant a mistrial, stating:
Although the jury’s verdict of “guilty” was coupled with verdict number one being circled, the judge did not believe that the record was clear as to the jury’s verdict. ... The jury returned with a verdict matching that which was circled on the original verdict form. Moreover, the jury was polled as to each of their verdicts. The original verdict could be construed as nonresponsive, which was corrected by the judge’s remanding the jury, which returned with a proper verdict.
Id. at 34.
Similarly, in the instant case, we find that the designation of each verdict by the number “1,” which corresponded to the verdict for the crime with which defendant was charged, clearly conveyed the intention of the jury, especially in light of the colloquy in which the trial court clarified with the foreman that the number one in front of the word “guilty” indicated that the verdict was verdict number “1” and in which the jury expressed its verdict as to all three counts. Accordingly, we find no merit to the defendant’s third assignment of error.
DISPOSITION
For the foregoing reasons, we affirm the defendant’s convictions.
AFFIRMED.

. We glean from the record that at the time defendant’s objections pursuant to Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) were addressed, there were three black potential jurors remaining on the venire. Presumably, these individuals were not selected from the venire.